469 So.2d 83 (1985)
Tommy E. NARON
v.
Ellis L. PRESTAGE.
No. 56113.
Supreme Court of Mississippi.
May 8, 1985.
*84 Lonnie E. Griffith, Jr., Jacobs, Griffith, Eddins & Povall, Cleveland, for appellant.
P.J. Townsend, Jr., Townsend, McWilliams & Holladay, Drew, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and PRATHER, JJ.
PRATHER, Justice, for the Court:
This is an election contest between Tommy E. Naron and Ellis L. Prestage, candidates in the Special Democratic Primary Election for Supervisor of District 4, Bolivar County. A special tribunal in the Circuit Court of Bolivar County, upheld the Bolivar County Democratic Executive Committee's certification of Prestage as the winner.
Naron appeals, assigning as error:
(1) The special tribunal erred in its failure to rule that the cash-drawing sponsored by appellee Prestage constituted a violation of Miss. Code Ann. § 23-3-27 (1972) and that, therefore, the election is void and a special election mandated;
(2) The special tribunal erred in failing to rule that the cash-drawing sponsored by appellee constituted a violation of Miss. Code Ann. § 23-1-51 (1972) and § 97-13-1 (1972);
(3) The special tribunal erred in its failure to rule that the cash-drawing sponsored by appellee constituted a lottery in violation of Miss. Code Ann. § 97-33-31 (1972).

I.
Appellant Tommy E. Naron and appellee Ellis L. Prestage opposed each other in the September 18, 1984 Special Democratic Primary Election for Supervisor of District IV, Bolivar County. Prior to the election, Prestage distributed 4,000 postcards to registered voters in east Cleveland announcing the following:

 --------------------------------------------------------------------------
| WIN $2,000.00 CASH |
| |
| Congratulations, I have checked the voter list at the courthouse and |
| found that you are a registered voter. |
| |
| Would you like to be 1 of 10 voters who will win $100.00 cash on |
| election day? Would you like to be THE voter who will win $1,000.00 cash |
| on election day? If so, bring this card with you to the Expo Building on |
| election day, September 18, 1984. After you vote, drop this card in the |
| "Concerned Voter Box". |
| |
| The drawing will be held at the Shady Grove Park at 6:20 p.m. |
| immediately following the election. The 1st 10 names drawn will get |
| $100.00 each. The 11th name drawn will get $1,000.00 cash. You do not |
| have to be present to win. Write your phone number on your card and how |
| to reach you if you can't be present for the drawing. |
| |
| This is a voter turnout drive sponsored by ELLIS L. PRESTAGE, |
| candidate for Supervisor, District 4. You do not have to vote for |
| Ellis L. Prestage to be eligible to win. Ellis L. Prestage encourages |
| you to vote for the candidate of your choice. |
| |
| ------------------------------------------------------------------------ |
| |
| P.S. - If you need a ride to the poll, call: |
| |
| BIRDIE LEE GRIFFIN ........ 846-1225 SUSAN RASH .............. 846-0238 |
| ARCHIE RASH ............... 843-3120 DOROTHY PERKINS ......... 843-5110 |
| SUSAN RASH ................ 843-8367 JOHN TAYLOR ............. 846-7029 |
 --------------------------------------------------------------------------

On election day, approximately 1,279 voters entered the cash-drawing by signing the cards and placing them in a "Concerned Voter Box" located outside of the restricted area of the voting precinct in east Cleveland. The person at the box asked each entrant whether they had voted and instructed them to vote prior to placing the cards in the box. After the polls closed, the drawing was held and the prize money distributed to the eleven winners.
*85 Of the 1,980 votes cast in the election, appellee Prestage received 995 and appellant Naron received 985. The following day, the Bolivar County Democratic Executive Committee certified the results of the election, declaring Prestage the Party's nominee for Supervisor of District IV.
Naron filed his protest of the election on September 28, 1984. The Bolivar County Democratic Executive Committee, by its Subcommittee on Elections, denied the protest on October 5, 1984. Upon petition for judicial review, a special tribunal upheld the election results.

II.
Did the special tribunal err in its failure to rule that the cash drawing sponsored by appellee constituted a violation of the candidate  gift statute.
Appellant's primary argument on appeal is that the cash drawing sponsored by Prestage constituted a violation of Miss. Code Ann. § 23-3-27 (1972), which provides as follows:
No person shall, directly or indirectly, demand, solicit, ask or invite from any candidate for nomination at any primary election a donation, gift, contribution, or any sort of loan or advancement of any amount of money whether large or small or of any other thing of value, or the promise thereof, or any similar demands; and this section shall apply to educational, religious, charitable and benevolent organizations and to every person acting or attempting or pretending to act for any one of them, and shall include the purchase of any tickets or any equivalent device by which the purposes of this statute might otherwise be circumvented. Nor shall any person acting individually or as a member of a committee, or otherwise, or pretending so to act, engage in the promotion of any picnic or other public gathering whereat candidates are to assemble or speak, the object of which is to make any profit out of charges made to the candidate or candidates, but this shall not apply to the rental of halls or grounds at a fair rental, nor to charges for expenses of picnics, gatherings and the like when only the actual expenses and no over plus or profits are taken; provided candidates are charged or assessed no more than other admissions. And no candidate at any time during the campaign shall make any donation, gift, contribution, loan or advancement, or contribute to the payment of any expenses prohibited by this section, or make any promises in that respect. Any person violating, knowingly, the provisions of this section shall be guilty of a misdemeanor, besides which the person or persons so violating this section shall not be permitted to vote in said primary and shall be subject to challenge at the polls, and if allowed to vote the said person or persons shall be guilty of another and separate misdemeanor in so doing. When any candidate is solicited to violate this section, he shall call the attention of the solicitor to it, and if he fails to do so, he shall for said failure be guilty of a separate misdemeanor. (Emphasis added).
Appellant argues that the cash drawing violated section 23-3-27 in three respects:
(A) Candidate Prestage violated the statute by sponsoring the drawing since the offer of a chance to win cash amounts to a gift;
(B) All voters who entered the cash drawing violated the section 23-3-27 prohibition against asking a candidate for a gift; and
(C) Candidate Prestage committed 1,279 violations of section 23-3-27 by failing to inform each voter who entered the cash drawing that in so doing they were asking a candidate for a gift.
Clearly, all of the alleged violations under section 23-3-27 turn upon whether the chance to "win $2,000 cash" constitutes a gift within the meaning of the statute. This question of the proper construction to be given section 23-3-27 has not been previously addressed by this Court. Appellant argues that section 23-3-27 must be construed *86 in light of the overall purpose of the Mississippi Corrupt Practices Law.
The legislative history of this statute clearly shows an intent to prevent illegitimate impositions upon candidates. Evidence of this intent may be found in the message of Gov. Conner in presenting the bill to the Legislature:
Demands or solicitations for gifts, loans, and subscriptions from candidates, especially county candidates, have become so common and so insistent upon them that it means financial ruin to a man of only moderate means to make a campaign at all; he is ruined if he is defeated and ruined if elected.
House Journal 1935, Extraordinary Session, p. 31. Appellee argues that the special tribunal was correct in holding that a statute designed to prevent impositions on candidates should not be invoked where the candidate himself initiates a gimmick or scheme designed to attract voters.
This Court agrees that the candidate gift statute was not intended to encompass the present situation. Supportive of this view is the fact that House Bill No. 145 introduced during current session of the Mississippi State Legislature was tailored to prohibit the very sort of cash-drawing employed by appellee. This bill, however, died in committee.
As a matter of public policy, a cash-drawing such as the one sponsored by Prestage is undesirable for a number of reasons. First, such a scheme encourages the electorate, whose motivation to vote should be a sense of civic duty, to go to the polls out of an ignoble desire for short term financial enrichment. Secondly, to the extent that such schemes may be perceived as a factor in determining close elections, unhealthy competition among candidates to offer the most attractive get-out-the-vote package could flourish; should such devices become common-place, a political campaign by a candidate of modest means would be financially unworkable.
Given that the scheme employed by Candidate Prestage is undesirable, the construction of section 23-3-27 urged by the appellant, i.e., that an offer of anything of value by a candidate to the electorate constitutes a gift, would outlaw everything from fish-frys, barbeques and musical entertainment to the commonly accepted practice of providing voter transportation to the polls on election day. In this Court's opinion, such wide-sweeping restriction upon campaign conduct is best left to the Legislature.

III.
Whether the lower court erred in failing to hold that the cash-drawing sponsored by appellee constituted a lottery?
Miss. Code Ann. § 97-33-31 (1972) provides as follows:
If any person, in order to raise money for himself or another, or for any purpose whatever, shall publicly or privately put up a lottery to be drawn or adventured for, he shall, on conviction, be imprisoned in the penitentiary not exceeding five years.
Appellant argues that the cash drawing sponsored by appellee Prestage constitutes a lottery. Williams Furniture Co. v. McComb Chamber of Commerce, 112 So. 579 (Miss. 1927) is the leading case on lotteries in Mississippi. In that case, merchants challenged a scheme initiated by the McComb Chamber of Commerce and various other merchants for the promotion of trade. The participating merchants gave tickets to customers who either made a purchase of $1.00 worth of goods or made a payment of $1.00 on an account. The drawing was held and prizes awarded to the winning tickets. This Court held that the scheme did not constitute a lottery because the essential element of consideration was absent.
Three essential elements are necessary to constitute a lottery: (1) The offering of a prize; (2) the awarding of a prize by chance; (3) the giving of a consideration for the opportunity to win the prize; and all three of these elements must concur in order to constitute a lottery. The offering and the award of a prize by *87 chance are not sufficient. There must be added, in order to make it a lottery, that the prize winner give a consideration for the opportunity to win the prize.
112 So. at 580.
The scheme employed by appellee Prestage in the case sub judice did not require voters to give candidate Prestage anything in return for the chance to win a cash prize. The post card distributed by Prestage specifically stated "You do not have to vote for Ellis L. Prestage to be eligible to win. Ellis L. Prestage encourages you to vote for the candidate of your choice."
In this Court's opinion, under Williams Furniture Co., supra, the cash drawing sponsored by the appellee did not constitute a lottery.

IV.
Whether the special tribunal erred in its failure to rule that the cash drawing sponsored by the appellee constituted bribery.
Miss. Code Ann. § 97-13-1 (1972) provides as follows:
If any elector, manager, clerk or canvasser at any election, or any executive officer attending the same, shall receive any gift, reward, or promise thereof or if any person shall offer such gift, reward, or promise thereof to influence any elector, clerk, canvasser, or any executive officer attending any election in his vote, opinion, action, or judgment in relation to such election, the person so offending shall, on conviction, be imprisoned in the penitentiary not more than two years or in a county jail not more than one year, or be fined one thousand dollars, or both.
Additionally, Miss. Code Ann. § 23-1-51 (1972) provides as follows:
It shall be unlawful for any person to sell or offer to sell his vote or influence, directly or indirectly, or to receive pay for his time or expense in canvassing to contribute to the success or defeat of any candidate or measure voted upon in the election; and it shall be likewise unlawful for any person to offer money or anything of value to anyone for his vote or influence or for his services in canvassing for or against any candidate or measure voted upon in any election. Anyone offending against this section shall be fined not less than fifty dollars nor more than five hundred dollars, or imprisoned not more than six months, or both.
Appellant argues that the cash drawing sponsored by appellee Prestage violates the bribery statutes, relying upon McLemore v. State, 125 So.2d 86 (Miss. 1961). The appellant in that case was convicted of bribery for offering $4,000 to a close personal friend of the district attorney in order to obtain the suppression of evidence at an upcoming arson trial. This Court stated that the elements of the offense of bribery are: (1) offer of a bribe; (2) to public officers; (3) with the intent to influence his action or judgment; (4) on any question, matter, cause or proceeding which may be then or thereafter pending subject to his action or judgment. 125 So.2d at 89.
It would appear that this assignment, like appellant's second assignment, fails due to an absence of consideration: the scheme sponsored by appellee required only that voters participate in the election and expressly disclaimed any attempt to influence the direction of that vote.

V.
This Court has held that special elections will be required only when (1) enough illegal votes were cast for the contestee to change the result of the election, or (2) so many votes are disqualified that the will of the voters is impossible to discern. Noxubee County Democratic E. Comm. v. Russell, 443 So.2d 1191, 1197 (Miss. 1983). The cash drawing scheme sponsored by appellee Prestage is clearly undesirable, but it is a practice not prohibited by the presently existing legislative scheme governing elections. Applicable here is the adage "Honor forbids what the *88 law allows."[1] The record reveals that none of the votes cast in this election were illegal by virtue of the cash drawing scheme. Therefore, this Court affirms the judgment of the Special Tribunal.
AFFIRMED.
WALKER and ROY NOBLE LEE, P.JJ., and DAN M. LEE, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
PATTERSON, C.J., and HAWKINS, J., dissent.
PATTERSON, Chief Justice, dissenting:
With deference to the Justices who hold contrary views, I dissent because I think the majority opinion is counter to the legislative intention expressed in the Corrupt Practices Act. There we are admonished not to burden the Act with "strict and illiberal construction." This language conveys the intention, to this writer at least, that the terms of the chapter are not to be construed within the narrow meanings of statutes relating to criminal offenses. Rather, some liberality was desired so that the Corrupt Practices Act could be fully effective and less prone to emasculation by judicial writ. Mississippi Code Annotated, Section 23-3-1 (1972).
This premise persuades me to dissent because my opinion is the cash giveaway scheme very probably swayed the outcome of the close election. The offer enticed registered voters to the polls with the promise of a chance to win cash, the only provision being that they exercise their franchise right. Although the offer was ameliorated by the additional statement, "Ellis L. Prestage encourages you to vote for the candidate of your choice," it inevitably followed that the cash opportunity flowed directly from the candidate Ellis Prestage and none other. In my opinion, the offer of a chance to win cash by pursuing the citizen's duty to vote is little different from an offer to pay cash, in whatever amount, for a citizen to vote. The difference is subtle but the result is the same. The hope of winning something for little, if any, cash outlay has great popular appeal as is established by the growing popularity of state lotteries for greater tax revenues. Public susceptibility to such schemes is, I submit, all too obvious.
For these reasons I think this Court should not condone a campaign practice that has the potential of straying far from the familiar political rally; i.e., fish fry, barbeque, and country music entertainment, and opens the door to "up the ante," as is done in ordinary gambling pursuits. This consequence is precisely contrary to the meaning of the Corrupt Practices Act in my opinion.
I share the thought of the majority that the public will should prevail and that another election at this late date would be disconcerting. However, on balance it seems to me the scheme portrayed by this record should be forthrightly condemned by this Court as being in direct conflict with the intention of the Legislature as expressed in the Corrupt Practices Act of this State. Failing in this, I would hope the issue receive legislative attention before the now successful cash prize scheme for voting invades other elections.
HAWKINS, J., joins this dissent.
NOTES
[1] Source unknown.