**SECRETARY OF STATE,**
**Plaintiff–Appellee,**

v.

**ST. AUGUSTINE CHURCH/ST. AUGUSTINE SCHOOL, St. Pius X Church, Nashville, St. Mary's Church, Johnson City, Memphis Hebrew Academy and Anshei Sphard Beth El Emeth Congregation, the East Catholic Club of Memphis, Inc., Knights of Columbus East Memphis Council No. 4312, Knights of Columbus Council No. 5062, Inc. and Ave Maria Guild, Inc., Intervenors–Appellants.**

Supreme Court of Tennessee, at Nashville.

Feb. 27, 1989.

Charles W. Burson, Atty. Gen. and Reporter, John Knox Walkup, Chief Deputy Atty. Gen., Jimmy G. Creecy, Chief Sp. Counsel, Perry Allan Craft, Deputy Atty. Gen., Steven A. Hart, Asst. Atty. Gen., Nashville, for plaintiff-appellee.

William M. Barrick, Nashville, William R. Bruce, J. Martin Regan, Jr., Bruce, Brandon & Regan, P.C., Louis F. Allen, Louis Jay Miller, Waring Cox, Memphis, James L. Bonner, Olive Branch, Miss. (Gilbert & Milom, Aleta Arthur, Nashville, of counsel), for intervenors-appellants.

Robert B. Littleton, Littleton, Weed & Hubbard, Robert C. Taylor, Taylor, Schlater, Lassiter, Tidwell & Trentham, Nashville, for amicus curiae.

OPINION

HARBISON, Justice.

This case involves the constitutionality of the State's "charitable bingo" statutes under the provisions of the Tennessee Constitution Article XI, section 5 which provides:

The Legislature shall have no power to authorize lotteries for any purpose and shall pass laws to prevent the sale of lottery tickets in this State.

The chancellor held unconstitutional certain statutes enacted by the General Assembly to exempt the game of bingo from the State's general gambling laws and to legalize its play under the auspices of various charitable, religious, fraternal and other non-profit organizations. We affirm.

The foregoing constitutional provision, which was adopted by the constitutional convention of 1834 and incorporated into the State's second constitution, effective January 1, 1835, was carried forward unchanged into the present constitution adopted in 1870.

Its terms are sweeping and absolute. It simply removes from the General Assembly the authority to authorize lotteries for any purpose—charitable, public, private, or any other. The constitutional provision mandated the General Assembly to enact laws to prohibit the sale of lottery tickets, and this was done promptly after the Constitution of 1835 took effect. Those statutes are now codified at T.C.A. § 39-6-624. This section of the Code is a part of the State's general laws prohibiting or regulating most forms of gambling.

We recognize, of course, that the constitutional provision did not prohibit all types of gambling. Except for lotteries, there is nothing in the constitution of the State prohibiting gambling, and the regulation of all other types of gambling, except lotteries, is a matter for determination by the General Assembly. The latter may prohibit all types of gambling, or it may legalize some and regulate others. Any form of gambling which consists of a lottery, however, may not be authorized or sanctioned by the General Assembly.

The statutes with which the chancellor was concerned in this case were codified at T.C.A. § 39-6-609. They purported to exempt the game of bingo from the general statutes against gambling and to regulate its conduct by a licensing system. Implicitly, of course, the General Assembly must have concluded that bingo was not a "lottery" but simply a form of gambling which it could authorize and regulate. In our opinion this conclusion was erroneous. The State Attorney General's office so advised the General Assembly on many occasions, but from 1973 through 1987 it passed a series of statutes and amendments, authorizing commercial "bingo." The more recent statutes proceeded on the theory that when cards for bingo play were sold by charitable, religious and similar organizations, the payment made by the customer constituted a charitable contribution rather than a wager, so long as the other terms and provisions of the regulatory statutes were observed.

It is the insistence of the appellants, who hold permits under the regulatory statutes, that the provisions of the state constitution above quoted were designed to abolish and outlaw only the older forms of "ticket lotteries" which were prevalent in the early nineteenth century and which have again become enormously popular in some states. A report to the Constitutional Convention of 1834 is referred to in the briefs of the parties, and that report referred to the many types of fraud, abuses and evils which had resulted from the practice of the General Assembly in licensing or authorizing ticket lotteries for various public, charitable and even private projects.

An examination of an opinion of this Court rendered a few years before the Constitutional Convention of 1834, however, reveals that all sorts of lotteries, public and private, were in vogue and were widespread despite rather stringent statutes prohibiting many forms of gambling. In the case of *State v. Smith*, 10 Tenn. 271 (1829) the conditions then prevalent were discussed at length by this Court, and the Court upheld a statute disqualifying from public office persons who had been convicted of gambling. In the course of its opinion the Court described many types of card games and other forms of gambling which the Court described as lotteries. The opinion of the Court was referred to in the report of the committee to the 1834 Constitutional Convention, and it represents a part of the background and history of the constitutional provision which was subsequently adopted. An examination of that opinion convincingly demonstrates that the older form of "ticket lotteries" was not the only type or form of lottery which was at that time considered to be socially undesirable and the source of numerous social evils.

The state constitution does not define the term "lottery", but the word is one of general usage and is neither arcane nor

obscure in meaning. A general unabridged dictionary contains the following definitions:

1: a scheme for the distribution of prizes by lot or chance; *esp:* a scheme by which prizes are distributed to the winners among those persons who have paid for a chance to win them usu. as determined by the numbers on tickets as drawn at random (as from a lottery wheel).. 2: the occasion of selection of prizes by lot 3: an event or affair whose outcome is or seems to be determined by chance.... (*Webster's Third New International Dictionary* 1338 (1981)).

In a standard law dictionary the term is defined in various ways, all of them similar to the foregoing. For example, the first definition contained in *Black's Law Dictionary* 853 (5th ed. 1979) is as follows:

A chance for a prize for a price. Essential elements of a lottery are consideration, prize and chance and any scheme or device by which a person for a consideration is permitted to receive a prize or nothing as may be determined predominantly by chance.

In the case of *State v. Smith, supra,* the Court stated that "lotteries are gambling, and odious gambling." 10 Tenn. at 283. This Court defined the term "lottery" in *France v. State,* 65 Tenn. 478, 483 (1873):

... the very definition of lottery is that it is a game of hazard in which small sums are ventured for the chance of obtaining a larger value either in money or other articles.

The elements of a "lottery" were again described in *State ex rel. District Attorney General v. Crescent Amusement Co.,* 170 Tenn. 351, 357, 95 S.W.2d 310, 312 (1936):

Many definitions have been given of the term "lottery". By the great weight of authority, in order that a transaction may be a lottery, three elements must be present consideration, prize and chance.[1]

In the statutes which were under consideration by the chancellor, the General Assembly undertook to remove the game of bingo from the definition of a lottery by terming the consideration paid by a customer as a charitable contribution rather than a wager. This, in our opinion, is an ineffective means to circumvent the constitutional prohibition, so long as the other elements of prize and chance are present.

Of course, the game "bingo" was not known in 1835 when the original Tennessee constitutional provision became effective. According to the briefs of the parties, the game was first introduced into the United States about 1928. It, of course, like many other games, may be played as a simple parlor game purely for the amusement of the participants. In this respect it is no different from dominoes, parcheesi, or any number of other perfectly innocent parlor games, although it demands less skill on the part of the player and turns almost wholly on the random drawing of numbers.

When conducted on a commercial scale,[2] however, for profit, and when chances, or tickets, are sold for a consideration, it is agreed by all parties that bingo becomes a form of gambling. In our opinion, "bingo" clearly constitutes a lottery within the meaning of the Tennessee Constitution. The constitutional provisions have been described by this Court as a "blanket" prohibition against lotteries in all forms. *See State v. Netto,* 486 S.W.2d 725, 728 (Tenn. 1972); *Bass v. City of Nashville,* 19 Tenn. 421 (1838).

The Tennessee constitutional prohibition was similar to those enacted in a substantial number of other states during the nineteenth century. It was not a unique provision. In almost every state having a similar provision, the game "bingo" as described in the Tennessee statutes and in the evidence has been held to constitute a "lottery." One of the leading cases is *State v.*

---

**1.** In that case the then popular "opportunity night" or "bank night" programs in movie theaters were held not to constitute lotteries because no charge was made to the theater patrons or to any member of the public desiring to register in order to obtain a ticket for the draw-ing. The case did not involve the interpretation of any regulatory statute.

**2.** The record in this action shows that receipts from "bingo" operations in Tennessee totalled thirty-one million dollars in 1987.

*Nelson,* 210 Kan. 439, 502 P.2d 841 (1972). In a case from Kentucky, bingo was held to constitute a lottery within the meaning of the constitutional provisions of that state then in force. *Otto v. Kosofsky,* 476 S.W. 2d 626 (Ky.1972); *see also A.B. Long Music Co. v. Commonwealth,* 429 S.W.2d 391, 394 (Ky.1968) ("lottery" includes bingo and other schemes for distribution of prizes by chance for consideration).[3]

In several states, earlier constitutional prohibitions against lotteries have been amended or modified so that the playing of bingo, either through charitable organizations or under other regulatory schemes, could be legalized by the state legislature. *See e.g.,* Cal. Const. art IV, § 19(c) (1966, amended 1976).

The intervening appellants have relied primarily upon two decisions which held that constitutional prohibitions against lotteries were confined to the earlier form of ticket lotteries and did not include bingo. The leading case is *Bender v. Arundel Arena, Inc.,* 248 Md. 181, 236 A.2d 7 (1967). The constitutional provision in that case forbade any "lottery grant." We do not find the decision persuasive in light of the Tennessee history previously discussed.

In a divided decision, the Supreme Court of Florida held that "charitable bingo" did not fall within the prohibition of the constitution of that state. The court relied upon the state's history and the *Bender* case *supra. Greater Loretto Improvement Assoc. v. State,* 234 So.2d 665 (Fla.1970). In light of the great weight of authority and our own analysis of the historical background of Article XI, section 5 we decline to follow these decisions.

This Court expresses no opinion, of course, as to the desirability of the legaliza-

tion of bingo or any other form of gambling. That subject is a matter for determination by the General Assembly within the ambit of its authority. Under the present constitutional provisions, however, the General Assembly may not authorize any form of lottery, directly or indirectly. The game of bingo, as described in the record before us and as described in the applicable statutes, simply falls within the generally accepted definition of the term "lottery."

The Court recognizes that many organizations and citizens deem the game to be a wholesome form of recreation and a useful means of raising money for worthwhile charitable, fraternal, religious and educational purposes. That there are concomitant abuses to which the game is susceptible, however, is amply demonstrated in the factual record which was made before the chancellor in the trial of this case. It is a matter for determination by the voting public as to whether the lottery prohibition contained in Article XI, section 5 should be repealed or amended. This Court is firmly of the opinion, however, that the constitutional provision in its present form completely prohibits the General Assembly from undertaking to legalize or authorize the game of bingo for any commercial purpose, charitable or otherwise.

The Court recognizes that in 1988, subsequent to the trial of this case, the General Assembly undertook to enact sweeping new regulatory laws respecting charitable bingo. 1988 Tenn.Pub.Acts, ch. 1029. That statute was not in force at the time of the trial of the case from which this appeal arises, but in our opinion no legislative definition of "bingo" could remove the

---

**3.** For examples of other cases holding the game of bingo and other games similar to it to constitute lotteries under statutory or constitutional prohibitions, *see People v. Babdaty,* 139 Cal.App. Supp. 791, 30 P.2d 634 (1934); *State v. Mabrey,* 245 Iowa 428, 60 N.W.2d 889 (1953); *United–Detroit Theaters Corp. v. Colonial Theatrical Enterprise, Inc.,* 280 Mich. 425, 273 N.W. 756 (1937); *Cotroneo v. Townsend,* 111 N.Y.S.2d 491 (N.Y. Sup.1952); *Army Navy Bingo v. Plowden,* 281 S.C. 226, 314 S.E.2d 339 (1984) ("Bingo is a

lottery, and it is gambling."); *State v. Amvets Post No. 80,* 541 S.W.2d 481 (Tex.Civ.App.1976) (bingo violates lottery statute); *State ex rel. Schillberg v. Safeway Stores, Inc.,* 75 Wash.2d 339, 450 P.2d 949 (1969) ("bonus bongo"); *State v. Laven,* 270 Wis. 524, 71 N.W.2d 287 (1955) (game of "Binko" played on television or radio a "lottery" under state constitution); *State ex rel Trampe v. Multerer,* 234 Wis. 50, 289 N.W. 600 (1940) (charitable bingo).

game as traditionally played from that form of gambling known as a lottery.

The judgment of the chancellor in this case is affirmed. Costs incident to the appeal will be taxed equally to the two sets of intervening appellants. All other costs will be fixed by the chancellor. The cause is remanded to the chancery court for collection of costs accrued there and any further proceedings which may be appropriate.

DROWOTA, C.J., and FONES, COOPER and O'BRIEN, JJ., concur.