958 F.2d 372
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jack BURNETT, Defendant-Appellant.
 No. 91-6128.
 United States Court of Appeals, Sixth Circuit.
 March 23, 1992.
 
 Before BOYCE F. MARTIN, JR., MILBURN and DAVID A. NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 The defendant, a Tennessee businessman and former state legislator, was tried and convicted in a federal district court on charges of income tax evasion and conspiracy to establish and operate an illegal gambling enterprise. He argues, among other things, that his conspiracy conviction should be overturned because the gambling enterprise in which he was involved (bingo) was not illegal in Tennessee at the time in question, so he did not violate "a state law" within the meaning of 18 U.S.C. § 1955. We find none of the defendant's arguments persuasive, and we shall affirm the conviction.
 
 
 2
 * Under Tenn.Code Ann. § 39-6-609, which has now been held unconstitutional, Secretary of State v. St. Augustine Church, 766 S.W.2d 499 (Tenn.1989), bingo games operated for fundraising purposes by organizations exempt from federal taxes were not covered by Tennessee's statutory ban on gambling.
 
 
 3
 Following an investigation by the United States Internal Revenue Service, the defendant in this case, Jack Burnett, was indicted on charges relating to the establishment of illegal commercial bingo operations in Nashville, Tennessee. A woman named Evelyn Hunnicutt was indicted with him. Count 1 of the indictment charged Burnett and Hunnicutt with conspiracy to acquire and control the charters of religious, charitable, or non-profit organizations in order to conduct an illegal gambling enterprise in violation of 18 U.S.C. §§ 1955 and 371. Specifically, the indictment charged that Mr. Burnett took money from Ms. Hunnicutt in return for obtaining and providing her with the charter of a non-profit organization known as Help Yourself, Inc., a corporation in the name of which Mr. Burnett fraudulently acquired a bingo permit. Count 2 charged Mr. Burnett with aiding and abetting Ms. Hunnicutt in the establishment and operation of an illegal gambling business in violation of 18 U.S.C. §§ 1955 and 2. Counts 3 and 4 charged Mr. Burnett with filing false federal income tax returns for 1985 and 1986, based on a failure to report income derived from illegal gambling.
 
 
 4
 Ms. Hunnicutt pleaded guilty before trial and subsequently testified as a witness for the prosecution. She told the jury that Mr. Burnett offered to help get her started in the bingo business and wrote out a "purchase offer" on a sheet of paper. This offer, which was introduced in evidence, covered bingo equipment costing $15,000 and two charters costing either $10,000 or $12,000.
 
 
 5
 Ms. Hunnicutt discussed Mr. Burnett's proposal with her friend and eventual partner, Bill Hood. In September of 1985 Hood wrote Burnett four checks totaling $27,000 in payment for the charters and equipment. Mr. Burnett then attempted to obtain the charter of a defunct church, the United Church of God; in this connection he filed papers with the State of Tennessee that gave his home address in Nashville as the address of the church and listed Jack Burnett and Evelyn Hunnicutt as the church's president and vice-president.
 
 
 6
 Mr. Burnett was unable to obtain a bingo permit for the Church of God. Accordingly, according to Ms. Hunnicutt's testimony, he applied for a bingo permit for a non-profit organization called "Help Yourself, Inc." Help Yourself had been formed in Memphis many years earlier by one Anna K. Gruber. Mrs. Gruber eventually stopped operating the organization due to advancing age, and the charter was revoked by the state.
 
 
 7
 The Tennessee Secretary of State's office received an application for a bingo permit in Help Yourself's name, along with documents requesting that the Help Yourself charter be reinstated. The papers included minutes which stated that the organization had moved from Memphis to Nashville; that Mrs. Gruber had resigned; that Ms. Hunnicutt had been elected an officer; and that the corporation was authorized to file for a bingo permit. Mrs. Gruber testified that the minutes were forgeries, as were other documents that bore her purported signature. Ms. Hunnicutt testified that Mr. Burnett had brought the minute book to her and had personally written the false minutes and had forged the other documents as well. A handwriting expert testified that pages 4-6 of the minutes were, in fact, written by Mr. Burnett.
 
 
 8
 The State of Tennessee reinstated the charter and issued a bingo permit to Help Yourself. Ms. Hunnicutt and Mr. Hood operated a bingo business for several months under this permit and then sold the business.
 
 
 9
 Raymond Davis, a business acquaintance of Mr. Burnett, testified that during the same period in which Mr. Burnett was working with Ms. Hunnicutt and Mr. Hood, Burnett began the process of reactivating the charters of organizations known as the Starlight Club and the Stardust Club. Mr. Burnett changed their names to Joywood Charities and Joywood Children's Guild, intending to transfer control of the charters to Mr. Davis for the purpose of conducting a bingo operation. When no bingo permit was forthcoming, Burnett leased Davis the charter of the Faith Universal Gospel Tabernacle, formerly known as the Faith Baptist Tabernacle. Mr. Davis testified that he paid Burnett approximately $35,000 in 1985.
 
 
 10
 The jury found Mr. Burnett guilty as to Count 1 and Count 3 and not guilty as to the other two counts. He now appeals his convictions.
 
 II
 
 11
 Under 18 U.S.C. § 1955, it is a crime to conduct, finance or own a gambling business that "is a violation of the law of a State or political subdivision in which it is located." Although gambling was generally illegal in Tennessee at the time of the alleged offense, Mr. Burnett argues that bingo, while subject to regulation, was legal under Tenn.Code Ann. § 39-6-609. He submits that the court should recognize a distinction between criminal/prohibitory gambling laws on the one hand and civil/regulatory gambling regulations on the other. He argues that he only violated the latter, and that the indictment therefore failed to state a violation of the laws of Tennessee as required by § 1955.
 
 
 12
 This argument fails under United States v. Hurst, 951 F.2d 1490 (6th Cir.1991). There we considered and rejected the distinction Mr. Burnett asks us to make here.
 
 
 13
 Mr. Burnett goes on to contend that one of the elements of an offense under 18 U.S.C. § 1955 was misstated in the indictment and jury instructions, because they referred to operating a gambling business "in violation of the law" of the forum state. The words of the statute as we have seen, are that the gambling business must be "a violation" of state law. Mr. Burnett argues that the the jury was allowed to convict him on the basis of his operating a gambling business that was in violation of state law by reason of noncompliance with a state regulation, even though the business was not a violation of state law. This argument relies on the alleged distinction between criminal/prohibitory gambling laws on the one hand and civil/regulatory gambling regulations on the other, a distinction that we must reject in light of Hurst.
 
 III
 
 14
 Mr. Burnett argues that the district court erred in its application of Fed.R.Evid. 403. First, he says that the court should not have allowed evidence pertaining to the United Church of God, Starlight Club/Joywood Charities, and Faith Baptist Tabernacle. He also argues that the district court erred in allowing Mr. Davis to testify in relation to Count 1. We reject both contentions. The evidence in question was not more prejudicial than probative as to either the conspiracy or tax count, and it was admissible as "other acts" evidence under Rule 404(b).
 
 
 15
 Mr. Burnett next argues that the district court erred in allowing witness Muehlberger, a handwriting and documents expert, to compare the minutes of a non-profit organization known as the Mid-South Association for Retarded Children with the minutes of Help Yourself, Inc. Mr. Burnett claims that he was unaware that the minutes were part of the government's case, that there was no foundation for Mr. Muehlberger's testimony, and that the evidence was more prejudicial than probative under Fed.R.Evid. 403. However, the record reveals that Mr. Burnett was aware that the government had initially planned to introduce the minutes as evidence and had only decided not to do so in order to save time. If Mr. Burnett suffered any prejudice, it was his own counsel's fault; counsel kept referring to documents that Mr. Muehlberger had seen before trial with the implication that the government was purposely withholding them. The district court did not abuse its discretion in admitting Mr. Muehlberger's testimony.
 
 IV
 
 16
 Mr. Burnett argues that there was insufficient evidence to convict him on Counts 1 and 3. We disagree. There was ample evidentiary support for the conclusion that Mr. Burnett conspired to operate an illegal gambling business. As to the income tax count, evidence presented at trial showed that Mr. Burnett received large sums of money from Mr. Hood and Mr. Davis for services related to illegal bingo operations in 1985--and an IRS investigator testified that Mr. Burnett told him that none of the money he reported on his tax return came from bingo-related activities. This evidence provided a sufficient basis for conviction on the tax count.
 
 V
 
 17
 The other assignments of error need not detain us long. Mr. Burnett argues that the district court abused its discretion by (1) denying his motion for a bill of particulars; (2) denying his motion to strike surplusage; and (3) denying his motion to sever the tax counts from the gambling counts. Having carefully considered these claims, we find that they are without merit.
 
 
 18
 AFFIRMED.