574 So.2d 662 (1990)
Joseph Andrew KNIGHT, Spinn-It Corporation, Metro Charities, Inc., Robert M. Malone, Billie F. Pettus, Larry Pettus, One and One Care Center, Inc., Desoto Amvets Post Number 1988, Roy L. Sills, Rosemary Sills, Amvets Post No. 1 and Bonnie Sanders
v.
STATE of Mississippi, ex rel., Mike MOORE, Attorney General and Mississippi State Tax Commission.
No. 90-CA-0568.
Supreme Court of Mississippi.
December 21, 1990.
Wayne L. Hengen, Hengen & Hengen, Biloxi, Michael Farrell, Wells Moore Simmons Stubblefield & Neeld, Jackson, Peter L. Doran, Baton Rouge, La., W.E. Gore Jr., Jackson, J. Edward Rainer, Rainer Hyche *663 & Toney, Brandon, Gerald W. Chatham, Hernando, for appellant.
Mike C. Moore, Atty. Gen., James L. Warren, III, Timothy L. Waycaster, Waycaster & Warren, Jackson, for appellee.
En Banc.
PRATHER, Justice, for the Court:

I. INTRODUCTION
This case involves over twenty defendants whose bingo[1] operations were "shut down" because Hinds County Chancellor W.O. Dillard struck down a statute[2] "exempting" bingo from a constitutional prohibition of lotteries:
No lottery shall ever be allowed, or be advertised by newspapers, or otherwise, or its tickets be sold in this state; and the legislature shall provide by law for the enforcement of this provision; nor shall any lottery heretofore authorized be permitted to be drawn or its tickets sold.
MISS.CONST. art. 4, § 98. About half the bingo operators appealed the judgment and presented numerous issues and sub-issues for disposition  the primary of which is whether the constitution's prohibition of lotteries embraces bingo.

A. Factual Background
A full account of the factual background would be tedious and unnecessary; therefore, only significant events are noted.
On January 10, 1990, the Office of Attorney General (hereinafter "AG") filed a complaint at the Hinds County Chancery Court against nine bingo operators and operations (hereinafter "operators") seeking a declaration: (1) "that the game of bingo fits the definition of lottery"; (2) that bingo, a form of lottery, is prohibited by the Mississippi Constitution; and (3) that Miss. Code Ann. § 97-33-51 (Supp. 1990), which exempts (i.e., legalizes) bingo, is therefore unconstitutional. The AG also sought injunctive relief "against the continued operation of... bingo games of any kind." The chancellor immediately issued (on January 10) a temporary restraining order (hereinafter "TRO")  enjoining "all [operators] and their agents ... from directly or indirectly engaging in or conducting bingo games in the State of Mississippi."
On January 23, 1990, the AG filed a second complaint against eleven more operators; this and the January 10 case were consolidated. The chancellor issued a preliminary injunction against the "new" defendants.
During the next several months, the operators inundated the chancellor with numerous motions, which he denied after holding hearings. The chancellor later granted a motion to join the State Tax Commission.
Finally, on April 17, 1990, the AG filed a motion for summary judgment. On April 27, the chancellor held a hearing  after which he granted the motion and permanently enjoined the playing of bingo (this Court subsequently granted the operators' "Motion for Stay Pending Appeal"). Numerous operators appealed.

B. Issues
Several appellants filed briefs; the remaining appellants "joined in." Collectively, the briefs contained eighteen issues (some duplicative) which are addressed in the following Section.

II. ANALYSIS

A. The Primary Issue: Whether Bingo is a Lottery?
No lottery shall ever be allowed, or be advertised by newspapers, or otherwise, *664 or its tickets be sold in this state; and the legislature shall provide by law for the enforcement of this provision; nor shall any lottery heretofore authorized be permitted to be drawn or its tickets sold.
MISS.CONST. art. IV, § 98. If bingo is a lottery or a form of lottery, then this section of the constitution makes bingo illegal, and the legislature may not exempt it via simple majority vote. And if bingo is illegal, then § 97-33-51 must be struck down as unconstitutional.

1. The Chancellor's Opinion
The chancellor rationalized his disposition of this issue via lengthy opinion which he rendered from the bench:
[T]he Court is well aware that there are numerous forms of bingo and it is also called by different names and described differently, but under the authorities of this state, namely, Naron v. Prestage, 469 So.2nd 83 (Miss. 1985), which cited language from Williams Furniture Company v. McComb Chamber of Commerce, [147 Miss. 649] 112 So. 579 (1927), the Supreme Court of this state defined "lottery" as: "(1) The offering of a prize; (2) The awarding of a prize by chance; (3) The giving of a consideration for the opportunity to win a prize; and all three of these elements must concur in order to constitute a lottery."
In addition to our Supreme Court defining lottery, Webster's Third New International Dictionary defines "lottery" as "A scheme for the distribution of prizes by lot or chance," and the generally recognized legal dictionary, Black's Law Dictionary, Fifth Edition, 1979, describes and defines "lottery" as "A chance for a prize for a price. Essential elements of a lottery are consideration, prize, and chance, and any scheme or device by which a person for a consideration is permitted to receive a prize or nothing as may be determined predominantly by chance." In addition to those definitions, this Court cited cases from the state of Washington; the Court cited a case from the state of Iowa that held that it did not matter the name, whether it was "beano," "keno," "tango," "lotto," "screeno," or whatever, it's still a game of chance and a lottery. That being State v. Mabrey, [245 Iowa 428] 60 N.W.2d 889 (1953).
And the principal case which removes any question in legal definitions or precedents is found in our sister state of Tennessee which just this past year, construing its constitution and a charitable form of bingo in the case of Secretary of State v. St. Augustine Church, 766 S.W.2d 499 (Tenn. 1989), said: "The Court recognizes that many organizations and citizens deem the game to be a wholesome form of recreation and a useful means of raising money for worthwhile charitable, fraternal, religious and educational purposes. That there are concomitant abuses to which the game is susceptible, however, is ample demonstrated in the factual record which was made before the chancellor in the trial of this case. It is a matter for determination by the voting public as to whether the lottery prohibition contained in Article XI, section 5, should be repealed or amended. This Court is firmly of the opinion, however, that the constitutional provision in its present form completely prohibits the General Assembly from undertaking to legalize or authorize the game of bingo for any commercial purpose, charitable or otherwise."
The Court went on to state that, in their opinion, "no legislative definition of `bingo' could remove the game as traditionally played from that form of gambling known as a lottery." The Court affirmed the chancellor in that case. And if you take the State of Tennessee and substitute Mississippi, this Court can find not one iota of difference in either the facts or the law where the Supreme Court of Tennessee made its ruling just this past year.
So, insofar as that law is concerned, the Court is of the opinion that there is no question but that bingo as played in this case is a lottery and therefore unconstitutional, and the exemption contained in Section 93-37-51 of the Mississippi *665 Code of 1972 has no effect whatsoever on the question of the constitutionality as noted by the Supreme Court in the state above mentioned.
So, for those reasons, the Court is of the opinion that, in addition to the activity being unconstitutional, the State would be entitled to a summary judgment in this cause and notes that the public policy and the State could suffer irreparable damages in that it could not prohibit or, in fact, as proposed in the Senate bill mentioned, license an unconstitutional activity. And, in addition thereto, the Court would have to, upon proper application, under Section 95-3-25, enjoin the activity as a nuisance since we all agree that it is a gambling activity and would not be authorized by law... .

2. The Bingo Operators' Position
The operators posit that the chancellor erred because "any construction of our constitution requires an examination of the historical setting to determine the precise evil that the constitutional framers sought to prevent or remedy." See Metro Charities' Brief at 24. In essence, the operators believe that the framers did not intend to prohibit bingo when they drafted MISS. CONST. art. IV, § 98 (1890).
The operators provide a lesson on the history of lotteries  beginning with the first known lottery authorized by Roman Emperor Augustus Caesar to help raise funds for city repairs, and concluding with lotteries in Mississippi, including the first one (in 1802) which the "Territorial Legislature" authorized to help raise funds for establishment of Jefferson College.
Lotteries in Mississippi were authorized until 1869, when they were constitutionally prohibited. MISS.CONST. art. XII, § 15 (1869) (which preceded MISS.CONST. art. IV, § 98 (1890)). Mississippi's prohibition of lotteries was in sync with the national trend; that is, many states at the time had also "banned" or "cracked down" on lotteries. According to the operators, the trend stemmed from a "scandal" during the 1880s involving the nationally-popular Louisiana lottery. Specifically, the Louisiana scandal resulted in the: (1) dissipation of public trust and confidence in the legitimacy of lotteries, and (2) imposition by state legislatures of statutory or constitutional restrictions of lotteries.
"This history makes clear that the constitutional framers intended to ban a specific form of gambling known to them as a lottery." Metro Charities' Brief at 29. And "[t]his is precisely the historical analysis used by the Maryland Court of Appeals in holding that bingo is not a lottery." Id. (citing Bender v. Arundel Arena, Inc., 248 Md. 181, 236 A.2d 7 (1967)); see also Brief of Bonnie Sanders at 5 (hereinafter "Sanders' Brief"). Specifically, the court in Bender premised that the constitutional prohibition of "lottery grants"  "considered in light of ... legislative and constitutional history and in the context of the long and by 1867 well recognized distinction in Maryland between gaming and lottery"  was "intended to mean traditional chartered ticket lotteries." 236 A.2d at 15. The court concluded that the term "lottery": (1) should be accorded a "more restricted, precise and technical meaning," and (2) should be distinguished from such games of chance as bingo. Id. at 12 & 15. See Greater Loretta Improvement Ass'n v. Florida, 234 So.2d 665 (Fla. 1970) (also holding that its constitutional prohibition of lotteries does not encompass bingo); see Sanders' Brief at 4 (contending that the definition of "lottery" does not contemplate "bingo") (citing D'Alessandro v. State, 114 Fla. 70, 153 So. 95, 96 (1934)).
The operators add that this Court has distinguished between "common forms of gambling [which] are ... innocuous when in contrast with the widespread pestilence of lotteries." Moore v. State, 48 Miss. 147, 161 (1873) ("The former are confined to a few persons and places, but the latter infests the whole community; it enters every dwelling; it reaches every class; it preys upon the hard earnings of the poor, and plunders the ignorant and the simple.") (quoting Phalen v. Virginia, 49 U.S. (8 How.) 163, 168-69, 12 L.Ed. 1030 (1850)); accord Stone v. Mississippi, 101 U.S. 814, *666 818, 25 L.Ed. 1079 (1879), cited in Metro Charities' Brief at 30.
The operators finally cite for support the "Mississippi Gaming Control Act"  which the legislature passed after the chancellor granted summary judgment. The Act construes § 98 by defining "lottery" in such a way that one could logically conclude that bingo must not be a lottery:
[W]hile not defining the term "lottery," Section 98 [of the Mississippi Constitution] clearly contemplates, as indicated by specific language contained therein, that a lottery involves the sale of tickets and a drawing in order to determine the winner... . [I]n carrying out its duties under the Constitution and effectuating the intent of Section 98, the Legislature hereby finds that a lottery, as prohibited by the Constitution, does not include all forms of gambling but means any activity in which:
(a) The player or players pay or agree to pay something of value for chances, represented and differentiated by tickets, slips of paper or other physical and tangible documentation upon which numbers, symbols, characters or other distinctive marks used to identify and designate the winner or winners; and
(b) The winning chance or chances are to be determined by a drawing or similar selection method based predominantly upon the element of chance or random selection rather than upon the skill or judgment of the player or players; and
(c) The holder or holders of the winning chance or chances are to receive a prize or something of valuable consideration; and
(d) The activity is conducted or participated in without regard to geographical location, with the player or players not being required to be present upon any particular premises or at any particular location in order to participate or to win.
Miss. HB 2, § 2(6)(a)-(d), 1st Extraordinary Sess. (1990) (emphasis added).
In sum, the operators contend that this Court should peruse the history of lotteries in order to comprehend the framers' intent when they drafted § 98 and prohibited lotteries. The operators conclude that, clearly, the framers did not intend to prohibit such games as bingo  which did not even exist at the time when § 98 was drafted. See Metro Charities' Brief at 31 ("Bingo was not even introduced in this country until 1928[; it] could not have been perceived as the kind of evil that the ... framers were attempting to eliminate.").

3. The AG's Position
The AG posits that, "[c]ontrary to [the operators'] assertion, Section 98 prohibits any and all lotteries by whatever name." AG's Brief at 23. And bingo, according to the AG, is "substantially similar in many respects to ... so-called traditional lotteries." Id. The AG adds that the similarity is particularly evident in light of this Court's opinion in Williams Furniture Co. v. McComb Chamber of Commerce, 147 Miss. 649, 112 So. 579 (1927). In Williams Furniture Co., some merchants challenged a marketing-promotional scheme sponsored by other merchants and the McComb Chamber of Commerce through which participating merchants gave numbered tickets to customers who purchased goods worth at least $1.00 or who made a payment of at least $1.00 on their store account. Customers, whose ticket numbers matched the numbers on the "prize tickets" drawn on a weekly basis, won cash prizes. The plaintiff-merchants contended that the scheme constituted a form of lottery, but the chancellor disagreed. On appeal, this Court affirmed after noting the absence of the essential element of consideration:
Three essential elements are necessary to constitute a lottery: (1) The offering of a prize; (2) the awarding of a prize by chance; (3) the giving of consideration for the opportunity to win the prize; and all three of these elements must concur in order to constitute a lottery. The offering and the award of a prize by chance are not sufficient. There must be added, in order to make it a lottery, that the prize winner give a consideration for the opportunity to win the prize.
147 Miss. at 655-57, 112 So. at 579-80.
Finally, the AG explains at length that the "overwhelming majority of other states *667 which have confronted this issue have [sic] held that bingo is a lottery prohibited under their respective state constitutions." AG's Brief at 27-33 (citing cases).[3]
In sum, the AG suggests that this Court should look to the plain meaning of § 98 as construed in Williams Furniture Co. and hold that bingo is simply another form of lottery. The AG concludes that the legislature was without authority to exempt bingo from § 98's prohibition of lotteries and that this Court should, as a consequence, strike down as unconstitutional Miss. Code Ann. § 97-33-51 (Supp. 1990). See AG's Brief at 34-35.

4. Disposition
To recap, the operators premise that their "comprehension" of the framers' "original intent" leads them to conclude bingo is not a lottery, whereas the AG premises that the "weight of authority" leads him to the contrary conclusion.[4]
This Court declines to adopt either of the parties' premises, but concurs in the operators' conclusion.

(a) The Operators' Premise: A Critical Assessment
Our Constitution  any constitution  is a document presumed capable of ordering human affairs decades beyond the time of its ratification under circumstances beyond the prescience of the draftsmen. We should read and enforce the Constitution in the manner which best fits its language, is most consistent in principle with the best justification which may be given for that language, and which best serves our state today.
Burrell v. Mississippi State Tax Comm'n, 536 So.2d 848, 854-55 (Miss. 1988) (citations omitted). Constitutions must be read objectively  if possible. Thus, this Court asks what the language means, not what the framers intended. Cf. O.W. HOLMES, COLLECTED LEGAL PAPERS 207 (1920), quoted in Mississippi Ins. Guar. Ass'n v. Vaughn, 529 So.2d 540, 542 (Miss. 1988).
The case sub judice involves a legislative construction of § 98 of the state constitution. To affirm the chancellor's decision, this Court must declare the legislation unconstitutional  calling to the fore the familiar and oft-repeated rules of construction collected in Burrell, 536 So.2d at 858-59. What is important at the moment is that § 97-33-51 of the Miss. Code Ann. is the sort of legislative construction which this Court has held in the past "persuasive" and "entitled to much weight." See, e.g., State ex rel Muirhead v. State Bd. of Election Comm'rs, 259 So.2d 698, 700 (Miss. 1972); L.N. Dantzler Lumber Co. v. State, 97 Miss. 355, 382, 53 So. 1, 3 (1910). This view is but a function of this Court's respect for the fact that § 97-33-51 is presented here after having been approved by the legislature and the governor  who, like the members of this Court, are sworn to uphold the dictates of the constitution. Burrell, 536 So.2d at 858. These guides help but do not erase the fact that, in the end, the Court alone must confront and resolve the issue presented. See Alexander v. State By & Through Allain, 441 So.2d 1329, 1333 (Miss. 1983); see also Frizzell v. Highwood Service, Inc., 205 Kan. 821, 473 P.2d 97, 101 (1969) ("[T]he *668 constitutional ban against lotteries ... is not self-defining. That function is judicial in nature." (emphasis added)).

(b) The AG's Premise: A Critical Assessment
Close scrutiny of the opinions of the "weight of authority" reveals its employment of "loopified" or circular reasoning  which amounts to nothing more than unacceptable ipse dixitism or dogmatism. Van Doren & Bergin, Critical Legal Studies: A Dialogue, 21 NEW ENGLAND L.REV. 291, 296 & 299-300 (1985-86). Restated, courts in other jurisdictions have generally reasoned that bingo is a lottery simply "because that's what other courts have concluded." In short, most courts which have addressed the issue have merely cross-referenced one another for authoritative support. See, e.g., Secretary of State v. St. Augustine Church, 766 S.W.2d 499, 501 (Tenn. 1989) ("In almost every state having [a constitutional] provision [prohibiting lotteries], the game `bingo' ... has been held to constitute a `lottery.'"); accord Bender v. Arundel Arena, Inc., 248 Md. 181, 236 A.2d 7, 11 (1967) ("Most states have held ... bingo to be [a] lotter[y], finding that they combine the classic elements of a lottery."). This Court cannot in clear conscience blindly concur in the conclusion that bingo is a lottery simply because other courts have so concluded. Cf. O.W. Holmes, Jr., The Path of the Law, 10 HARV.L.REV. 456, 469 (1897) ("It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if ... the rule simply persists from blind imitation of the past."); see also Van Doren & Bergin, supra, at 299-300 ("Reason can only help you get from point A to point B. But where did point A come from?") (citing D. HOFSTADTER, GODEL, ESCHER, BACH, AN ETERNAL GOLDEN BRAID 23-24, 229-30 (1979)).

(c) An Acceptable Premise
This Court believes it should look to the popular meaning of "lottery" and "bingo" in order to determine whether the terms are one and the same or sufficiently similar to justify striking down § 97-33-51 as unconstitutional. Over 100 years ago, Massachusetts Supreme Court Justice O.W. Holmes Jr. similarly concluded that disposition of the issue  whether a so-called "envelope game" was a lottery  required comprehension of the "popular use of the word as shown by the dictionaries." Commonwealth v. Wright, 137 Mass. 250, 251-52 (1884) (emphasis added). In addition to dictionaries, experience should help to enlighten this Court. See O.W. HOLMES, THE COMMON LAW 1 (1881) ("The life of the law has not been logic: it has been experience. The felt necessities of time, the prevalent moral and political theories, institutions of public policy, avowed or unconscious, even the prejudices which judges share with their fellow-[citizens], have had a good deal more to do than the syllogism in determining the rules by which [citizens] should be governed." (emphasis added)).
Accordingly, this Court has perused dictionaries and other sources (e.g., experience) in search of the "popular" meaning of "lottery" and "bingo." Both games unquestionably inhere the elements of chance, consideration, and prize; however, this premise alone does not lead to the conclusion that both are one and the same. Indeed, the game of poker inheres the elements of chance, consideration, and prize. Does this mean that poker is a lottery? The AG contends (as does the "weight of authority") that any game which inheres the three elements is a lottery; therefore, the AG presumably would conclude that poker is a lottery. Indeed, under this broad definition, the stock market, life insurance, and other business enterprises involving the three elements could be deemed a lottery. Such logic seems no less absurd than that which equates a horse, dog, and cat with one another simply because each specie has four legs, two eyes, and one tail.
The absurdity stems from the unexplained recognition that the term "lottery" should be deemed the generic "umbrella" which encompasses any game (or business enterprise?) inhering the three elements. This Court is unconvinced that the term *669 "lottery" is a generic umbrella. The term "gambling" would seem to be the appropriate umbrella; this would be consistent with the popular meaning of all terms concerned "as shown by the dictionaries" and experience. Accord BLACK'S LAW DICTIONARY 611 (5th ed. 1979) ("Gambling consists of a consideration, an element of chance, and a reward."); BARRON'S LAW DICTIONARY 278 (1984) (A lottery is a "gambling scheme in which consideration is taken in return for the offering of a prize that will be given on the basis of chance."); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 932 (Unabridged 1986) (same).

(d) Summation
In sum, disposition of this case is not reached by purporting to know what the framers intended nor by utilizing Pythagorean logic. Instead, this Court concludes that, pursuant to the "popular" meaning of the terms, bingo is not a lottery. This Court's conclusion is reinforced by the structure and wording of § 98. The provision twice prohibits selling lottery "tickets"  i.e., (1) "... or its tickets be sold in this state," and (2) "or its tickets sold." This rather clearly connotes a particular kind of lottery: one with tickets. The provision strongly suggests a restrictive definition  that not all forms of lottery (assuming bingo is even a form) are banned (i.e., only those with tickets). This Court has long held that, in construing the constitution, no words may be regarded as surplusage but should instead be given meaning and effect. Dye v. State ex rel Hale, 507 So.2d 332, 342 (Miss. 1987); Trahan v. State Highway Comm'n, 169 Miss. 732, 749, 151 So. 178, 181 (1933). Few commonly consider bingo as having tickets that are sold, and any attempt to equate a bingo card with a lottery ticket would be superficial at best and unpersuasive at worst.
Therefore, § 97-33-51 is hereby declared constitutional, and the chancellor's decision is reversed.

B. Remaining Issues
The remaining issues have been deemed moot or devoid of merit and do not warrant discussion. Therefore, the chancellor's decision is affirmed on these issues.

III. CONCLUSION
Based upon the foregoing, this Court holds that bingo is not a lottery prohibited by the constitution. Therefore, Miss. Code Ann. § 97-33-51 is hereby declared constitutional, and the chancellor's decision is reversed.
Finally, this Court notes that the bingo-exemption statute is drafted with vague language and allows for manipulation and abuse by corporate entities or individuals who falsely purport to operate the games for the benefit of "nonprofit civic, educational, wildlife conservation or religious organization." Strict guidelines and enforcement measures via legislation is needed to avert further personal profiteering and circumvention of the statute's purpose.
REVERSED AND RENDERED AS TO THE ISSUE OF THE CONSTITUTIONALITY OF MISS. CODE ANN. § 97-33-51 (Supp. 1990).
AFFIRMED AS TO THE REMAINING ISSUES.
DAN M. LEE, P.J., and ROBERTSON, SULLIVAN, ANDERSON and BLASS, JJ., CONCUR.
ROY NOBLE LEE, C.J., dissents by separate written opinion, joined by HAWKINS, P.J., and PITTMAN, J.
ROY NOBLE LEE, Chief Justice, dissenting:
I respectfully dissent from the majority action upholding Miss. Code Ann. § 97-33-51, the bingo exemption statute. I specifically take issue with the rationale which concludes that bingo is not a lottery within the definition of Miss.Const. Art. 4, § 98. Clearly, if bingo is a form of a lottery (which I submit it is), this section of the constitution makes bingo illegal, and the legislature may not exempt it via simple majority vote. And, if bingo is illegal, then § 97-33-51 must be struck down as unconstitutional.
*670 As early as 1927, this Court defined "lottery" as any game which inheres the three elements of consideration, chance, and a prize. Williams Furniture Co. v. McComb Chamber of Commerce, 147 Miss. 649, 112 So. 579 (1927); see also Naron v. Prestage, 469 So.2d 83, 86-87 (discussing the elements of a lottery and citing Williams Furniture Co.). This definition is substantially equivalent to those provided by other courts. (See cases cited supra.) For today's purpose, I find it unnecessary to consider the effect of this definition on games or activities other than bingo. For example, I deem it inappropriate to address the effect of this constitutional section on gambling. For while all lotteries may be forms of gambling, all gambling is not a form of lottery. In short, it is appropriate today to consider only whether bingo is a lottery.
Virtually all jurisdictions which have addressed the issue have concluded, without equivocation, that bingo inheres the elements of a lottery and, thus, bingo is a lottery prohibited by their state constitutions. Accord Secretary of State v. St. Augustine Church, 766 S.W.2d 499, 501 (Tenn. 1989) ("In almost every state having [a constitutional] provision [prohibiting lotteries], the game `bingo' ... has been held to constitute a `lottery.'"); Bender v. Arundel Arena, Inc., 248 Md. 181, 236 A.2d 7, 11 (1967) ("Most states have held ... bingo to be [a] lotter[y], finding that they combine the classic elements of a lottery."); 54 C.J.S. Lotteries § 7, at 489 (1987) ("[I]t is generally held that `bingo' ... or the like is a lottery.").
A neighboring jurisdiction recently decided a case whose facts are analogous to those in the case sub judice. In Secretary of State v. St. Augustine Church, a chancellor struck down a statute which exempted "charity bingo" from a constitutional prohibition against lotteries. 766 S.W.2d 499 (Tenn. 1989). The section of the Tennessee Constitution upon which the chancellor premised is strikingly similar to our own, providing that:
The Legislature shall have no power to authorize lotteries for any purpose and shall pass laws to prevent the sale of lottery tickets in this State.
TENN.CONST. art. XI, § 5, quoted in St. Augustine Church, 766 S.W.2d at 499. On appeal, the Tennessee Supreme Court affirmed and rationalized: (1) that although the constitution does not define "lottery," the term is "one of general usage and is neither arcane nor obscure in meaning"; (2) that by definition, a lottery comprises the three elements of consideration, prize, and chance; (3) that bingo "clearly constitutes a lottery within the meaning of the Tennessee Constitution" notwithstanding the nonexistence of bingo at the time when the framers drafted § 5 of article XI. St. Augustine Church, 766 S.W.2d at 500-01 (citing several sources for support).
In addition to Tennessee, an overwhelming number of other states have declared that bingo is a lottery prohibited by their respective constitutions. See, e.g., Army Navy Bingo, Garrison # 2196 v. Plowden, 281 S.C. 226, 314 S.E.2d 339, 340 (1984); see also St. John's Melkite Catholic Church v. Commission of Revenue, 240 Ga. 733, 242 S.E.2d 108 (1978); State v. Crayton, 344 So.2d 771, 774 (Ala. Civ. App.); cert. denied, 344 So.2d 775 (Ala. 1977); State v. Amvets Post Number 80, 541 S.W.2d 481, 482-83 (Tex.Civ.App. 1976) Otto v. Kosofsky, 476 S.W.2d 626, 628-29 (Ky. App. 1972); State v. Nelson, 210 Kan. 439, 502 P.2d 841, 847 (1972); cited in State v. Kennedy, 225 Kan. 13, 587 P.2d 844, 851 (1978); State v. Safeway Stores, Inc., 75 Wash.2d 339, 450 P.2d 949, 953-57 (1969); State v. Mabrey, 245 Iowa 428, 60 N.W.2d 889, 892-93 (1953); Society of Good Neighbors v. Van Antwerp, 324 Mich. 22, 36 N.W.2d 308, 309 (1949); State v. Multerer, 234 Wis. 50, 289 N.W. 600, 603-04 (1940). In the face of such authority, I find the majority's holding that bingo is not a lottery to be both unpersuasive and disingenuous.
Clear research reveals that the term "lottery" has "no precise, technical meaning," but has traditionally been defined as involving the three elements of consideration, chance, and prize. See Greater Loretta Improvement Ass'n v. State, 234 So.2d 665 (Fla. 1970); see also St. Augustine Church, *671 766 S.W.2d at 500-01 (The term is one of "general usage and is neither arcane nor obscure in meaning."). The definition delineated by this Court nearly sixty-four years ago in Williams Furniture Co. is in sync with the term's definitional "tradition" or its "general usage" and should be reaffirmed in the case at bar.
Forceful precedent dictates that bingo is prohibited by § 98 of the state constitution. The bingo-exemption statute, § 97-33-51, should thereby be declared unconstitutional, and the chancellor's decision to grant summary judgment should be affirmed. If such occurred, it would be a simple matter for the legislature to submit the limited bingo issue for vote by the people via constitutional amendment  just as simple as enacting Miss. Code Ann. § 97-33-51. Churches and charities could not complain of such action. Society must inventory itself and choose its priorities!
For the reasons stated above, I dissent from the majority.
HAWKINS, P.J., and PITTMAN, J., join this opinion.
NOTES
[1] For "judicial" definitions of bingo, see Bingo Bank, Inc. v. Strom, 268 S.C. 498, 234 S.E.2d 881, 883 (1977) (also citing numerous cases in which "bingo" is defined). See also Vol. I, at 2 (copy of complaint which includes a description of the varying types of bingo played at the defendants' bingo "emporia"  "not all bingo was created equal").
[2] Specifically, the statute provides:

The provisions of this chapter shall not apply to any bingo game or to any raffle wherein a ticket is sold and a prize is offered, when such bingo game or raffle is being held by and for the benefit of any nonprofit civic, educational, wildlife conservation or religious organization with all proceeds going to said organization.
MISS. CODE ANN. § 97-33-51 (Supp. 1990).
[3] See, e.g., Pruitt v. State, 557 N.E.2d 684 (Ind.2d Dist Ct.App. 1990); Secretary of State v. St. Augustine Church, 766 S.W.2d 499 (Tenn. 1989); Army Navy Bingo, Garrison # 2196 v. Plowden, 281 S.C. 226, 314 S.E.2d 339, 340 (1984); State v. Crayton, 344 So.2d 771, 774 (Ala. Civ. App.), cert. denied, 344 So.2d 775 (Ala. 1977); Otto v. Kosofsky, 476 S.W.2d 626, 628-29 (Ky.App. 1972); State v. Kennedy, 225 Kan. 13, 587 P.2d 844, 851 (1978); State v. Safeway Stores, Inc., 75 Wash.2d 339, 450 P.2d 949, 953-57 (1969); State v. Mabrey, 245 Iowa 428, 60 N.W.2d 889, 892-93 (1953); State v. Multerer, 234 Wis. 50, 289 N.W. 600, 603-04 (1940); Society of Good Neighbors v. Van Antwerp, 324 Mich. 22, 36 N.W.2d 308, 309 (1949); St. John's Melkite Catholic Church v. Commissioner of Revenue, 240 Ga. 733, 242 S.E.2d 108 (1978).
[4] The AG also relies on this Court's dicta in Williams Furniture Co. v. McComb Chamber of Commerce to support his conclusion that bingo is a lottery. 147 Miss. 649, 112 So. 579 (1927). Unfortunately, such reliance was misguided. Williams Furniture Co. dealt solely with the narrow issue of whether a merchant's promotional scheme constituted a lottery. Thus, Williams Furniture Co. has no application to the case sub judice other than to support the premise that lottery inheres three elements inherent in bingo, and this premise alone does not lead to the conclusion that bingo is a lottery.