595 So.2d 434 (1992)
Dan McDONALD and Beverly Ryall, Trustees of and for Dr. Prentiss E. Smith, Inc., Money Purchase Pension Plan, Southeastern Health Care, Inc. and Dr. Prentiss E. Smith
v.
Paul H. HOLMES.
No. 89-CA-40.
Supreme Court of Mississippi.
February 26, 1992.
Frank D. Montague, Jr., Montague Pittman & Schwartz, Hattiesburg, for appellant.
Maurice Dantin, Dantin & Dantin, Columbia, for appellee.
Before HAWKINS, P.J., and BANKS and McRAE, JJ.
BANKS, Justice, for the Court:
Once again we are called upon to determine the propriety of a grant of summary judgment in chancery court. At issue is the nature of the relationship between investors and the obligations one to the other. Finding ample genuine dispute over issues of material fact we reverse and remand.

*435 I
This case is before this Court on appeal from Copiah County Chancery Court, where on October 17, 1988, the court denied plaintiffs' Motion to Leave to File Third Amended Complaint, and instead granted defendant, Paul Holmes' (Holmes) Motions for Summary Judgment.
The initial plaintiffs below were Dr. Prentiss E. Smith, Inc., Money Purchase Pension Plan (Pension Plan), through its Trustees Dan McDonald and Beverly Ryall, and Southeastern Health Care, Inc. (Southeastern), two Louisiana domiciled corporations. They claimed in their Second Amended Complaint that beginning January 8, 1982, and ending August 10, 1983, Pension Plan loaned Holmes the sum of $1,264,542.10 for the purpose of enlarging Pine Crest Guest Home (Pine Crest) in Hazlehurst, Mississippi. The loan was to be repaid at the rate of ten percent interest in 240 annual installments of $12,203.87 each and was to be evidenced by a promissory note and secured by deed of trust on the property in favor of First Guaranty Savings and Loan Association dated August 26, 1983. Pension Plan further alleged that Holmes had reported the loan indebtedness as a liability and payment item but had not executed or formalized the debt instruments. They requested that a lien be impressed on the property.
Southeastern alleged that a Nursing Home Consultant and Management Services Agreement existed between itself and Holmes which was initiated on November 1, 1981, and ended on December 31, 1986. Southeastern alleged that it furnished all services and performed all obligations required by said agreement and that "[s]aid Agreement has continued in performance and de factor [sic] recognition beyond its stated expiration date, but [Holmes] has refused to extend it by formal writing." Pension Plan and Southeastern further alleged that on September 1, 1987, Holmes sent a letter of termination to Dr. Prentiss E. Smith, (President of Southeastern) and that Holmes is attempting to sell Pine Crest Guest Home without affording Pension Plan the lien protection for the loan.
Holmes admitted to having entered into an agreement with Southeastern, which commenced November 1, 1981, and ended October 31, 1986, but denied that the agreement continued in performance beyond stated expiration date. He also admitted to termination of Southeastern's services on the date alleged by Southeastern. However, Holmes denied that he was selling Pine Crest, but stated that if given adequate consideration, he would not refuse to sell. Holmes further denied that Pension Plan loaned him money to construct additional bed facilities at Pine Crest.
Holmes subsequently filed a counterclaim against Southeastern alleging inter alia that Southeastern illegally commingled Holmes' funds and wrongfully deprived him of those funds. He sought a return of those funds which Southeastern retained as alleged payments on the alleged debt to Pension Plan, a total of $521,818.24.
After an exchange of discovery, plaintiffs moved to amend adding Prentiss Smith, individually, as a plaintiff and adding allegations of joint venture, breach of fiduciary duty and resulting trust. Smith is the sole beneficiary of the Pension Plan and the sole stockholder of Southeastern. He alleged a continuing course of dealings with Holmes wherein he and Holmes and the other entities participated in various ventures and that Holmes also served as his personal and corporate lawyer in Mississippi.
Holmes resisted the proposed amendment asserting misjoinder and lack of venue. Holmes also filed a motion for summary judgment asserting that the construction loan was unenforceable because it was not supported by a writing and the last alleged advance was August 10, 1983, more than three years before the filing of the first complaint in 1987. He asserted that the three year statute of limitations for unwritten contracts, Miss. Code Ann. § 15-1-29 (1972) applies.
Pension Plan through the affidavits of Smith and one of Holmes' former secretaries contended that Holmes had authorized Smith to sign his name to various *436 documents in connection with their various dealings, including the nursing home in question, and that Holmes had authorized Smith to and Smith had signed Holmes' name to a note evidencing the indebtedness. Pension Plan also contended that the relationship between Holmes and the plaintiffs was a joint venture and for that reason and others, Holmes was a fiduciary and that there was a resulting trust subject to the ten year statute of limitations.
Other facts in the record of note are as follows:
Financial statements, apparently prepared by Holmes' accountants, list the debt to Pension Plan as one of Holmes liabilities.
An affidavit from one of the Pension Plan trustees to the effect that Holmes claimed that the loan had been repaid by virtue of transactions involving Smith and Holmes in relation to an entity or enterprise known as Bass Aviation.
Bass Aviation is listed as the subject of documents relevant to the inquiry in Holmes' response to interrogatories and is alleged by Smith to be one of the business dealings between Holmes, Smith and the other plaintiffs which defines their relationship.
The period of time over which the construction advances were made was 1982-1983. The first check written by Southeastern, which is alleged to be in repayment of the loan, is dated 12/31/85 in the amount of $288,000. The next check was for $24,407.74 and written August 1, 1986. There followed monthly checks in the amount of $12,203.87 through August 28, 1987.
The trial court entered an order granting Holmes summary judgment against Pension Plan for its claim against him, summary judgment against Southeastern on its claim and on Holmes claim for reimbursement for the amounts expended as shown next above, and denying plaintiffs' motion for leave to amend. The trial court did not write an opinion and no explanation appears in the order for any of its actions.

II
This matter turns on whether the trial court erred in denying plaintiffs' motion to allow an amended complaint. Miss. R.Civ.P. 15(a) governs amendments and provides in part:
A party may amend his pleading as a matter of course at any time before a responsive pleading is served, or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within thirty days after it is served.
The Comment states that there is no limit on the number of amendments which can be made. Further, "when justice requires, amendments are to be freely allowed." Comment, Miss.R.Civ.P. 15(a); See also 6 Wright & Miller, Federal Practice and Procedure, Civil § 1484 (1971). However, motions for leave to amend are addressed to the sound discretion of the trial court. Bourn v. Tomlinson Interest, Inc., 456 So.2d 747, 749 (Miss. 1984); citing 3 Moore's Federal Practice (2d ed. 1984) § 15.08[4]. We review such determinations, then, under an abuse of discretion standard. Bourn, 456 So.2d at 749; citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).
In Bourn, this Court held that a chancellor did not abuse his discretion when he overruled the appellants' motion to amend their pleadings after the chancellor had announced that he was sustaining the defendants' motion for summary judgment. Bourn, 456 So.2d at 749, 750. A cursory glance at the facts in Bourn reveals an important distinction between that case and the instant case. In Bourn, both parties had filed motions for summary judgment. It was only after the chancellor ruled in favor of defendants that plaintiffs made an ore tenus motion to amend their pleadings to "Reform the Instrument." The court noted that plaintiffs had amended their pleading after an earlier dismissal of the cause of action. Id. There was no indication as to the specific nature of the amendment to be offered.
*437 Here plaintiffs filed their motion before Holmes made his motions for summary judgment and they alleged specific alternative grounds for relief.
Another point of significance in the case at bar is that the lower court did not state why it denied the appellants' motion to file a third amended complaint. In Price v. Price, 430 So.2d 848, 849-850 (Miss. 1983), we discussed a chancellor's failure to assign any reason for the denial of appellant's motion to amend his pleading.
Where no reason is assigned as grounds for the denial of a motion to amend a pleading, this Court has no guide whereby it can determine if a trial court has abused its discretion. This Court is then left in a dilemma wherein reversible error becomes a possibility, if not a probability, even though the trial court's reasoning might have been a proper exercise of its judicial discretion.
Id.
In an attempt to glean from the record a basis for denying plaintiffs' motion we have reviewed Holmes' assertions in opposition. Holmes contended that the proposed amended complaint should be disallowed because:
1. The proposed third amended complaint is a conglomeration of misjoinders containing diverse nonequitable claims of diverse parties.
2. The proposed third amended complaint attempts to join an unrelated plaintiff in unrelated matters.
3. The proposed third amended complaint fails to state any basis for jurisdiction or venue of the additional plaintiff.
Here he presses the misjoinder and venue issues in apparent recognition of the fact that Smith, the supposed "unrelated" party, does clearly allege rights arising out of a series of transactions related to and including the transactions regarding Pine Crest.
Reference to our rules readily reveals that these contentions are devoid of merit. Under Miss.R.Civ.P. Rule 20(a)
[a]ll persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative, in respect of or arising out of that same transaction, occurrence, or series of transactions or occurrences, and if any question of law or fact common to all these persons will arise in the action.
We have made clear that our trial courts, chancery and circuit, have full jurisdiction to adjudicate all claims in a single action without regard to whether they arise in equity or at law. Hall v. Corbin, 478 So.2d 253 (Miss. 1985) Miss.R.Civ.P., Rule 18. Where suits involve several claims or several parties, venue is proper wherever it is proper as to one such claim. Miss.R.Civ.P. 82(c). Holmes makes no attempt to quarrel with the application of these rules. Instead he attacks the allegations in the amended complaint on substantive grounds and concludes with the speculation that the chancellor found that the issues alleged by Southeastern and Pension Plan were different than those alleged by Smith. Being merely different is, of course, not enough. It is clear that Smith alleges causes of action arising out of a series of transactions which includes those creating the issues between Southeastern and Pension Plan. We conclude that the chancellor committed manifest error in denying the motion for leave to amend.

III
Our conclusion with regard to the amended complaint dictates the result of the summary judgment issue. Miss.R.Civ. P., Rule 56 provides that Summary Judgment may be granted when there is no genuine issue of material fact and the moving party is entitled to it as a matter of law. The seminal case construing the procedure is Brown v. Credit Center, Inc., 444 So.2d 358 (Miss. 1983). There, this Court stated that a trial court, in considering a motion for summary judgment, must review with the utmost care, all evidentiary matters  pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Id. at 362. If, after conducting this review, there exists no genuine issue as to any material fact, then the moving party is entitled to judgment as a matter of law. On the other hand, however, when *438 doubt exists whether there is a fact issue, the non-moving party gets its benefit. Id.
We have also said that a chancery court should proceed with special caution when urged to grant summary judgment, in recognition of the fact that such cases are tried before the court without a jury and full exposition of the facts is often no more time consuming than the presentation of the motion. McMullan v. Geosouthern Energy Corp., 556 So.2d 1033, 1036 (Miss. 1990); Marsalis v. Lehmann, 566 So.2d 217, 221 (Miss. 1990) (Hawkins, concurring).
Here, in light of the amended complaint and freed from the narrow confines of a suit on open account, it is clear that there are or may be genuine disputes as to material fact precluding summary disposition at this stage. Plaintiffs should have been given the opportunity to show that the relationship between the parties was something other than that of lender/creditor through unwritten agreement in a full trial on the merits or at least a more complete exploration of the facts put in issue by the amended complaint.

IV
For the foregoing reasons the judgment of the chancery court is reversed, and this matter is remanded to that court for further proceedings.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., PRATHER, ROBERTSON and McRAE, JJ., concur.
SULLIVAN and PITTMAN, JJ., not participating.