635 So.2d 1369 (1994)
Linda B. FRANK
v.
William B. DORE, Michael L. Hlinak, Arcadia Management, Inc., and Mississippi Coast Coliseum Commission.
No. 91-CA-00528.
Supreme Court of Mississippi.
March 17, 1994.
Rehearing Denied May 19, 1994.
*1370 Edgar F. Maier, Rushing & Guice, Biloxi, for appellant.
William V. Westbrook, III, William S. Boyd, III, Kenneth Raymond Flottman, Eaton & Cottrell, William E. Whitfield, III, Elizabeth L. Baine, Bryant Clark Dukes Blakeslee Ramsay & Hammond, Gulfport, for appellee.
Before PRATHER, P.J., and PITTMAN and SMITH, JJ.
PITTMAN, Justice, for the Court:

I. INTRODUCTION
This appeal arises from a grant of summary judgment in favor of Arcadia Management, Inc. and Mississippi Coast Coliseum Commission. Because the lower court erred in its analysis of § 87-1-1 as it applies to *1371 legal and charitable bingo games and denied Appellant's Motion to Amend the pleadings, we reverse and remand.

II. STATEMENT OF THE CASE
On August 25, 1989, Appellant filed a Complaint in Chancery Court of Harrison County, alleging inter alia, that the Defendants through negligence and/or deliberate misconduct, failed to pay her $55,000.00 in prize money to which she was entitled. The Complaint in part prayed for specific performance of the contract and agreement between the parties, specifically the defendants' requirement of paying the $55,000.00 balance for the "Super Jackpot" purse. Appellant also prayed for recovery in the form of actual damages, general damages for mental and emotional distress, punitive damages and attorney's fees. The Complaint named the following as Defendants: William B. Dore and Michael L. Hlinak, Arcadia Management, Inc., Sacred Heart and Notre Dame Alumni Association & Friends, Inc., and Mississippi Coast Coliseum Commission. Appellant's original Complaint contained the following theories of recovery: fraud, breach of contract, specific performance, intentional misrepresentation, and negligent operation of the games.
On August 25, 1989, Appellant propounded interrogatories, requests for admissions and requests for production of documents on all defendants. The Mississippi Coast Coliseum Commission filed responses to Appellant's requests for admissions on September 21, 1989. The substance of each response was that the Coliseum Commission was acquiring the necessary information to appropriately respond. On this same day, the Coliseum Commission requested additional time to file an answer, which was later granted by the court.
On November 17, 1989, prior to any of the Defendants filing their respective Answers, the Coliseum Commission, filed a Motion for Summary Judgment pursuant to M.R.C.P. 56(b). The Motion stated in part that because the Coliseum Commission merely leased the premises to Arcadia, it did not hold itself out as a promoter of the "World Series of Bingo". The Coliseum Commission further alleged that because it was a political subdivision of the State, it was in no way liable to Appellant.
On November 20, 1989, Defendants Dore, Hlinak and Arcadia, joined to file a Motion to Quash Service of Process and a Motion to Dismiss the Complaint pursuant to M.R.C.P. 12(b)(6). The former discussed problems with the service and long-arm statute, while the latter 12(b)(6) Motion stated in part that "since Plaintiff's claim for actual damages are barred as a matter of statutory law, the Complaint fails to state a cognizable claim for punitive damages." The Motions submitted by Defendants were noticed for a hearing on March 6, 1990.
On March 6, 1990, prior to the hearing, Appellant filed a Motion for Leave to Amend her Complaint, seeking the court's permission to amend her Complaint to include federal civil Racketeer Influenced and Corrupt Organization Act [hereinafter "RICO"], claims. During the hearing on March 6, 1990, and due to inadequate notice, all party Defendants objected to the court considering Appellant's Motion to Amend. In response, Appellant volunteered to re-notice the hearing. The hearing was set for May 2, 1990, however, sometime between March 6, 1990 and May 2, 1990, Appellant retained new counsel. From the record, it appears that the hearing scheduled for May 2nd was indefinitely continued.
On June 28, 1990, Appellant dismissed her Complaint as against Sacred Heart and Notre Dame Alumni Association, and thereafter on July 18, 1990, an agreed Order was entered by the court.
On August 31, 1990, prior to the court ruling on the first Motion to Amend, Appellant filed a second Motion to Amend the original Complaint. In the second amended Complaint, Appellant sought to include certain new theories for recovery; including third party beneficiary to the contract, intentional tort, and civil RICO claims. Appellant *1372 also requested that certain new defendants be included, allegedly brought in by way of the amended complaint. The lower court by Order dated September 10, 1990, denied the second Motion to Amend, without written explanation or findings.
On September 6, 1990, the chancery court held a conference pertaining to the Motions submitted by Appellant and Defendants. The court overruled Appellant's Second Motion for Leave to Amend and Defendant's Motion to Quash Service. The court issued an Order regarding Appellant's Motion on September 10, 1990, and an Order regarding Defendant's Motion on September 17, 1990.
On October 9, 1990, all parties moved the court to stay the proceedings pending the decision in Knight v. State ex rel. Moore, 574 So.2d 662 (Miss. 1990), which the court granted by Order dated October 12, 1990.
A second hearing was held on March 27, 1991, at which time all "pending" Motions were considered, including the Coliseum Commission's Motion for Summary Judgment and Arcadia's 12(b)(6) Motion. The Coliseum Commission argued that they were in no way liable to Frank as they were responsible only for leasing the premises for the games to Arcadia. Counsel for Arcadia argued that Appellant's original Complaint failed to state a claim upon which relief could be granted based on § 87-1-1 of the Mississippi Code, which barred any form of recovery by the Appellant. Appellant argued that after Knight, bingo was no longer an impermissible activity and thus the provisions within § 87-1-1 should not apply. In response, Counsel for Arcadia stated that the Knight case did not speak to § 87-1-1, rather it questioned whether the provisions of § 97-33-51 were constitutional in light of prohibitions against lotteries in Article IV, § 98 of Constitution.
On April 9, 1991, the lower court issued its written opinion on the matter, stating that Appellant's cause of action was barred by § 87-1-1 of Mississippi Code Annotated. Subsequently, the lower court by Order dated April 24, 1991, granted Summary Judgment in favor of all Defendants.
Aggrieved by the lower court's grant of Summary Judgment, Appellant filed Notice of Appeal to this Court. Appellant submits two assignments of error for this Court's consideration:
(1) THE CHANCERY COURT ERRED IN ITS HOLDING THAT § 87-1-1 (1972), OF MISSISSIPPI CODE ANNOTATED, BARS THE COLLECTION OF WINNINGS FROM LEGAL BINGO GAMES
(2) THE CHANCERY COURT ERRED IN DENYING APPELLANT LEAVE TO AMEND HER COMPLAINT TO INCLUDE CLAIMS RELATED TO THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT (RICO), 18 U.S.C.A., § 1961, et seq.

III. STATEMENT OF THE FACTS
In August of 1988, Sacred Heart and Association sponsored a charitable fund raising event billed as the "World Series of Bingo", which included a "$75,000.00 Super Jackpot Game". Publicity for the event was generated through the use of flyers distributed by Arcadia Management, via the U.S. Mail. The circulated advertisement for the event "guaranteed" a $400,000.00 week-end.
Prior to the August 1988 event, Arcadia Management by and through William B. Dore and Michael L. Hlinak, contracted with Sacred Heart and Association to organize the venture for August 13 and 14, 1988. In turn, Arcadia leased the Mississippi Coast Coliseum from the Coliseum Commission for the event. The contract concerning the lease between the two parties was entered in May of 1988, and the terms included Arcadia paying the Coliseum Commission the sum of $6,600.00 for leasing the premises. By the same contract, Arcadia also agreed to provide security measures and maintenance personnel for the event.
On August 13, 1988, Appellant paid $180.00 for a double-pack of level two (2) cards, in order to participate in the day's bingo games, *1373 including the Super Jackpot Game for a $75,000.00 purse. One of the conditions imposed on the $75,000.00 purse was that players purchase level two (2) cards and cover all spaces on a level 2 card. Appellant met both conditions and upon winning the Super Jackpot Game, proceeded to collect her winnings. Appellant first received $10,000.00. After disputing this amount, Appellant accepted the sum of $20,000.00 under protest, due to the fact that a $75,000.00 purse was advertised.
After the event on August 13, 1988, Sacred Heart and the Notre Dame Alumni Association cancelled the bingo games scheduled for the next day.
After attempting and failing to collect the additional $55,000.00, Appellant filed the present action on August 25, 1989.

IV. STANDARD OF REVIEW FOR SUMMARY JUDGMENT
This Court employs a de novo standard of review in reviewing a lower court's grant of a summary judgment motion and looks at all the evidentiary matters before it. Mantachie Natural Gas District v. Mississippi Valley Gas Co., 594 So.2d 1170, 1172 (Miss. 1992); Short v. Columbus Rubber & Gasket Co., Inc., 535 So.2d 61, 63 (1988).
A motion for summary judgment lies only when there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. M.R.C.P. 56(c). This burden of proving that no disputed factual issues exist rests with the Coliseum Commission, and is one of production and persuasion, not of proof. Fruchter v. Lynch Oil Co., 522 So.2d 195, 198 (Miss. 1988). To prevent summary judgment, the non-moving party must establish a genuine issue of material fact by means allowable under the Rule. Lyle v. Mladinich, 584 So.2d 397, 398 (Miss. 1991).

The Lower Court's Findings
The lower court denied Appellant leave to amend; dismissed Arcadia's 12(b)(6) Motion; and granted summary judgment in favor of Arcadia and the Coliseum Commission. The court in part justified this grant because of § 87-1-1, which according to defendants, precluded any recovery on a claim involving a gaming contract. The opinion in part reads:
While our legislature, by its enactment of Section 97-33-1, saw fit to exempt certain types of bingo games from prosecution under the State's gambling laws. It did not change Section 87-1-1 of the Mississippi Code of 1972 so as to provide the same exclusion from those certain types of bingo games from the effects of that statute.
The Mississippi Supreme Court in its recent ruling in the case of Joseph Andrew Knight et al. v. State of Mississippi, concluded that bingo was not a lottery and therefore Section 97-33-1 was not unconstitutional. The decision did, however, include bingo under the generic umbrella of gambling. As such, the Court is of the opinion that the suit brought in this case against the Defendants herein should be dismissed with prejudice.

(1) DID THE CHANCERY COURT ERR IN ITS HOLDING THAT § 87-1-1 (1972), OF MISSISSIPPI CODE ANNOTATED, BARS THE COLLECTION OF WINNINGS FROM LEGAL BINGO GAMES?

At the hearing on March 27, 1991, Arcadia discussed as part of their 12(b)(6) Motion to Dismiss, the applicability of § 87-1-1. Arcadia stated that § 97-33-51 had been upheld as Constitutional by this Court in the Knight case, but only to the extent of stating that bingo was not a lottery, and therefore not prohibited by the State Constitution.
Section 87-1-1 provides:
§ 87-1-1. Utterly void.
Contracts, judgments, securities, conveyances made, given, granted, or executed where the whole or any part of the consideration or foundation thereof shall be for money, or any valuable thing won, lost, or *1374 bet at any game or games, or on any horse race, cock-fight, or at any sport, amusement, or pastime, or any wager whatever, or for the reimbursing or repaying any money knowingly lent or advanced for the purpose of such gaming or gambling, or to be wagered on any game, play, horse-race, cock-fight, or on any sport, amusement, pastime, or wager, shall be utterly void.
Miss. Code Ann. § 87-1-1 (1972).
Based on § 87-1-1, Arcadia deemed Appellant's cause of action improper as the Complaint was grounded in seeking recovery on a gaming contract which according to § 87-1-1 is "utterly void." Section 87-1-1 declares "utterly void" all contracts executed and made in connection with illegal gaming activities, including horse-racing and cock-fighting.
In March of 1987, Section 97-33-51 was adopted and thereafter became effective. This section exempted charitable bingo games from any and all "illegal" definitions under Mississippi law. Therefore, bingo is currently a lawful activity and as such is removed from § 87-1-1. Furthermore, this Court in Knight v. State ex rel. Moore, 574 So.2d 662 (Miss. 1990), held that bingo is not a lottery and as such could be conducted as a lawful activity in this State.
It would be completely illogical for this Court to hold that while Section 97-33-51 legally permits charitable bingo games, that Section 87-1-1 completely bars any form of court assisted recovery for participants in legally conducted bingo games. To so hold would permit promoters to advertise and conduct bingo games while at the same time provide a statutory shield to protect the same promoters from having to pay the promised winnings. Such an application of § 87-1-1 would be a mockery of law. Ms. Frank, though engaged in a legal activity, would be barred from protection of the law because the activity once was illegal. Charles Dickens wrote, "the law is an ass." It has been the experience of this writer that the law is never an "ass"; however, it is made to sometimes appear that way by judges or courts. We avoid such nonsense today by holding that Ms. Frank may make her claim and that the courts will decide the correctness of the claim. This Court is unable to agree with Arcadia's statement that there is no authority under Mississippi law for a civil suit to collect winnings derived from lawful bingo games.
Section 87-1-5 of the Code, was amended in 1990 to exempt any and all lawfully conducted gaming activities. This section lends support for permitting parties to sue and recover under certain types of gaming contracts:
§ 87-1-5. Loser may sue and recover money or property lost; exceptions.
If any person, by playing at any game whatever, or by betting on the sides or hands of such as do play at any game, or by betting on any horse race or cockfight, or at any other sport or pastime, or by any wager whatever, shall lose any money, property, or other valuable thing, real or personal, and shall pay or deliver the same or any part thereof, the person so losing and paying or delivering the same, or his wife or children, may sue for and recover such money, property, or other valuable thing so lost and paid or delivered, or any part thereof, from the person knowingly receiving the same, with costs. However, this section shall not apply to betting, gaming or wagering:

(3) That is legal under the laws of the State of Mississippi. [Emphasis added].
Miss. Code Ann. § 87-1-5 (1991).
We find no reason to believe that Section 87-1-1 voids any contract founded on a legal transaction. We are fortified in this view by the fact that Section 87-1-5 was amended as shown above. It would indeed by anomalous for our legislature to provide that one could not recover payments made pursuant to a void contract. Put another way, if legal as well as illegal gambling contracts are void pursuant to Section 87-1-1, then they should be treated no differently for purposes of recovery of payments pursuant to Section 87-1-5.

*1375 (2) DID THE CHANCERY COURT ERR IN DENYING APPELLANT LEAVE TO AMEND HER COMPLAINT TO INCLUDE CLAIMS RELATED TO THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT (RICO), 18 U.S.C.A., § 1961, et seq.?

Appellant's second claim turns on whether the lower court erred in denying leave to amend. Appellant sought to amend her Complaint on March 6, 1990, and on August 31, 1990. This action occurred after the Coliseum Commission had moved for Summary Judgment on November 17, 1989, and had partially responded to Appellant's discovery.[1] The hearing on March 6, 1990, in part considered Appellant's Motion to Amend. Arcadia objected to the notice requirements and the hearing was to be rescheduled. There is no record of a later hearing. The lower court denied Appellant leave to amend by Order dated September 10, 1990. No written findings or basis for the denial were contained in the Order.
At the March 1991 hearing, the court considered "all pending motions" and focused primarily on the Coliseum Commission's Motion for Summary Judgment and Arcadia's Motion to Dismiss pursuant to 12(b)(6). In addition, Arcadia argued that Appellant's first Complaint was the only Complaint properly before the Court and that the Court should not consider Appellant's suggested Amended Complaint as it had not been approved, and as such was not properly before the court.
Appellant was denied leave to amend by the court without the court expounding on the reasons for the denial. While there were responsive pleadings submitted by the Coliseum Commission, answers had not been filed by the Coliseum Commission or Arcadia at the time Appellant requested leave to amend. From the record, it appears that neither Arcadia nor the Coliseum Commission would have been prejudiced by granting Appellant leave to amend. The Motion for Summary Judgment, Motion to Quash and Motion to Dismiss, while submitted prior to Appellant's Motions to Amend, were not ruled on until after the court denied leave to amend.
Motions for leave to amend are left to the sound discretion of the trial court. Bourn v. Tomlinson Interest, Inc., 456 So.2d 747, 749 (Miss. 1984); citing 3 Moore's Federal Practice (2d ed. 1984) § 15.08[4]. This Court reviews such determinations under an abuse of discretion standard and unless convinced that the trial judge abused his discretion, we are without authority to reverse. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222, 226 (1962).
The United States Supreme Court further stated in Foman that:
Rule 15(a) declares that leave to amend `shall be freely given when justice so requires'; this mandate is to be heeded ... if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason  such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.  the leave sought should, as the rules require, be `freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules. [Emphasis supplied].
Foman, 371 U.S. at 182, 83 S.Ct. at 230, 9 L.Ed.2d at 226.
*1376 The authority governing amendment of complaints is found in Rule 15(a) of the Mississippi Rules of Civil Procedure which provides in part:
A party may amend his pleading as a matter of course at any time before a responsive pleading is served, or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within thirty days after it is served ... Otherwise, a party may amend his pleading only by leave of court or upon written consent of the adverse party; leave shall be freely given when justice so requires.
From the record in the present case, it appears that Appellant's proposed amended complaint contains additional theories of recovery (these additional allegations stem from the same transactions and series of events) and also seeks to include additional parties connected with Arcadia's letters of credit. In McDonald v. Holmes, 595 So.2d 434 (Miss. 1992), this Court reversed the lower court's decision which denied Appellant leave to amend and held in part that:
Our conclusion with regard to the amended complaint dictates the result of the summary judgment issue. Miss.R.Civ. P., Rule 56 provides that Summary Judgment may be granted when there is no genuine issue of material fact and the moving party is entitled to it as a matter of law... . We have also said that a chancery court should proceed with special caution when urged to grant summary judgment, in recognition of the fact that such cases are tried before the court without a jury and full exposition of the facts is often no more time consuming than the presentation of the motion. McMullan v. Geosouthern Energy Corp., 556 So.2d 1033, 1036 (Miss. 1990); Marsalis v. Lehmann, 566 So.2d 217, 221 (Miss. 1990) (Hawkins, concurring).
Here, in light of the amended complaint and freed from the narrow confines of a suit on open account, it is clear that there are or may be genuine disputes as to material fact precluding summary disposition at this stage. Plaintiffs should have been given the opportunity to show that the relationship between the parties was something other than that of lender/creditor through unwritten agreement in a full trial on the merits or at least a more complete exploration of the facts put in issue by the amended complaint. [Emphasis supplied].
The majority in McDonald also stressed the fact that the lower court failed to specify why it denied the Appellant's motion to file an amended complaint and relied on Price v. Price, 430 So.2d 848, 849-850 (Miss. 1983), wherein this Court stated:
Where no reason is assigned as grounds for the denial of a motion to amend a pleading, this Court has no guide whereby it can determine if a trial court has abused its discretion. This Court is then left in a dilemma wherein reversible error becomes a possibility, if not a probability, even though the trial court's reasoning might have been a proper exercise of its judicial discretion.
McDonald, 595 So.2d 434, 437 (quoting Price v. Price, 430 So.2d 848, 849-850 (Miss. 1983)).
As in McDonald, the Appellant in the present case filed the Motion to Amend prior to the defendants filing the Motion for Summary Judgment. It also appears that Appellant's complaint and proposed amended complaint allege causes of action arising out of a series of transactions which could include claims implicated by the RICO Act. Therefore, we find that the chancellor committed manifest error in denying Appellant's Motion for leave to amend.

V. CONCLUSION
Because there appears to be numerous factual disputes including: the extent of the Coliseum Commission's participation in the sponsored event; the effect of the Coliseum Commission's name being included on the advertising circular; whether the Coliseum *1377 Commission was aware of the beneficiaries named on the letters of credit; and whether Arcadia was aware of the inadequate financial ability to pay the advertised winnings, we reverse and remand this case.
Furthermore, the lower court was incorrect in its analysis of the current state of the law surrounding legal bingo games. Section 87-1-1 does not bar collection of debts arising out of legal gaming activities.
Finally, from the record in this case, it appears that the lower court erred in denying Appellant leave to amend her complaint to include RICO claims arising out of the same series of events. As such, the grant of summary judgment was premature.
Accordingly, this case is reversed and remanded.
REVERSED AND REMANDED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, BANKS, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
McRAE, J., concurs in result only.
NOTES
[1] The Coliseum Commission had responded to one set of interrogatories and one set of requests for production.