20422

BINGO BANK, INC., Respondent, v. J. P. STROM, Chief, South Carolina Law Enforcement Division, Appellant.

(234 S. E. (2d) 881)

*Robert E. Kneece, Esq., of Kneece, Kneece & Freeman,*
Columbia, *for Respondent,*

*Messrs. Daniel R. McLeod, Atty. Gen., Joseph C. Coleman, Rep. Atty. Gen., Harry W. Davis, Asst. Atty. Gen., and Cameron B. Littlejohn, Jr., Staff Atty.,* of Columbia, *for Appellant,*

May 10, 1977.

LEWIS, Chief Justice:

The operation of the game "Bingo Bank" upon its premises near Walterboro, South Carolina, by respondent, Bingo Bank, Inc., during December 1975 and January 1976, brought about the arrest of certain of respondent's employees on charges of violation of South Carolina gaming laws. Respondent contended that it was operating the game of bingo as permitted by Article 17, Section 7, of the South Carolina Constitution and brought this action to restrain the appellant and other agents of the State Law Enforcement Division from taking further action to stop respondent's "Bingo Bank" operations. The lower court granted the restraining order sought, holding that respondent's activities constituted the game of bingo as presently permitted under the South Carolina Constitution. This appeal is from that order. We reverse.

Prior to its amendment in 1975, Article 17, Section 7, of the Constitution made unlawful the operation of any lottery in this State, but was amended in 1975 to permit "the game

of bingo" under certain conditions. As amended, Section 7 of Article 17, at the times pertinent to the present issues, was as follows:

"No lottery shall ever be allowed or advertised by newspapers, or otherwsie, or its tickets be sold in this State. The game of bingo, when conducted by charitable, religious or fraternal organizations exempt from Federal income taxation or when conducted at recognized annual State and County fairs, shall not be deemed a lottery prohibited by this section."

The sole question for decision is whether the "Bingo Bank" operated by respondent constituted "the game of bingo" permitted by Article 17, Section 7, of the Constitution.

Section 7 contains no definition of the game of bingo. However, the record shows that the game of bingo has been played at various churches and organizations for years prior to the 1975 amendment to Section 7. Appellant properly concludes from the testimony and common knowledge that it was "because of the illegality of the game of bingo and its general social acceptance" that the amendment in question was adopted.

The 1975 amendment refers to the "game of bingo, when conducted by charitable, religous or fraternal organizations . . . or at recognized State and County fairs." The conclusion is inescapable, therefore, that "the game of bingo" under the 1975 amendment refers to the game previously played illegally by charitable organizations throughout the State. The testimony clearly describes the game of bingo customarily played in this State by such organizations and is the "bingo" referred to in the constitutional provision in question.

The "game of bingo" is played by the use of a card on which is printed twenty-five squares arranged in five rows of five squares each. The word "Bingo" is at the top of the card.

with one letter at the top of each column. The squares on the card contain twenty-four numbers and one free space. The numbers in the five squares under the letter "B" range from one to fifteen, under the letter "I" from sixteen to thirty, under the letter "N" from thirty-one to forty-five, under the letter "G" from forty-six to sixty, and under the letter "O" from sixty-one to seventy-five. Each card used by the players contains a different arrangement of the numbers and the card is indispensable to the play of the game. The player, to enter the game, purchases a card at a set price and no further bets or payments are made. There are always numerous players and they are notified beforehand of the prize they will win if they are successful. The payment for the card and the value of the prize to the winner remain the same throughout the game.

The game of bingo is played by the use of a "Caller" who announces, one at a time, numbers drawn at random from a container into which has been placed numbered balls or objects for that purpose. A total of seventy-five numbers are used. When a number is called, any player having that number would cover that square on his card with some small previously designated object. The winner of the game is the first player who covers a row of squares in accordance with a previously set configuration, such as a vertical, horizontal, or diagonal row of numbers from those drawn and announced. Each game has a winner.

The above described game is the "game of bingo" customarily played illegally throughout the State prior to the amendment in 1975 of Article 17, Section 7 and is the "game of bingo" exempted therein from the prohibition against lotteries.

Similar definitions of the game of bingo may be found in *Loder v. City of Canton,* 111 N. E. (2d) 793, Ohio Com. Pl.; *Creash v. State,* 131 Fla. 111, 179 So. 149; *State v. Multerer,* 234 Wis. 50, 289 N. W. 600.

There are material differences between the game of "Bingo Bank" and the "game of bingo" as above described. Bingo Bank is played with one player. While several may play, no one would play in conjunction with the others. The cards used are all identical and the winner does not depend upon covering the squares in any configuration. In fact, the shape of the card and the arrangement of the figures is of no significance. The Bingo Bank player must make additional wagers as the game continues and the prize varies according to the length of the game and the odds at which the management places its bets. The prize in Bingo Bank may be won on the first roll of the dice or draw of a number, or the game may continue indefinitely if the player fails to roll or draw the winning number.

The foregoing method of playing Bingo Bank is at variance with the described manner in which the game of bingo is played and clearly distinguishes Bingo Bank from the game of bingo as contemplated by Article 17, Section 7.

The judgment of the lower court is accordingly reversed.

NESS, RHODES and GREGORY, JJ., and JOSEPH R. MOSS, Acting J., concur.