574 S.E.2d 717

FRATERNAL ORDER OF POLICE, Charleston Lodge # 3, Pet Helpers, Inc. d/b/a Shipwatch Bingo, Army Navy Union Garrison # 2020, Faith Temple Full Gospel Fellowship Church, A. Terre Des Hommes USA, Inc., Cherokee Suicide Intervention Center, Inc., Army Navy Garrison # 2165, Lexington Voiture 1211 La Societe Des 40 & 8 d/b/a Sunset Bingo, United Veteran Association, Inc., Roadrunners Softball Association, Inc., United Society of the Blind of Greenwood, The Good Samaritan Mission Center d/b/a Beacon Bingo, Fraternal Order of the Elks (BPOE), Greenville Lodge No. 858, Piedmont Historical Society d/b/a Great American Bingo, Pilgrim's Inn, Inc., West Main Community Club, Ms. Wheelchair South Carolina, Inc., Citizens for Advancement of the Physically Handicapped, Post 174 American Legion Ladies Auxiliary, HF Help Corporation, Army Navy Garrison # 2154, AMVETS Post 80, Army Navy Garrison # 1994, Army Navy Garrison # 2154, Cherokee Gaffney Sertoma Club 10752, South Carolina Dairy Goat Association, Grand Strand Optimist Club d/b/a Galaxy Bingo, Miss Dillon County Beauty Pageant, Inc., Church in the Lord Jesus Christ of the Apostolic Faith, Inc.-Lake City, Church in the Lord Jesus Christ of the Apostolic Faith, Inc.-Darlington, Church of the Lord Jesus Christ of the Apostolic Faith, Inc.-Lynchburg, Dovesville Rural Fire Department, Union Baptist Church, VFW # 3181, Appellants,

v.

SOUTH CAROLINA DEPARTMENT
OF REVENUE, Respondent.

No. 25566.

Supreme Court of South Carolina.

Heard Oct. 8, 2002.

Decided Dec. 9, 2002.

422

424

Joseph Alton Bivens and Gerald M. Finkel, both of Finkel & Altman, L.L.C., of Columbia, for appellants.

Harry T. Cooper, Jr., Ronald W. Urban and Sarah G. Major, all of South Carolina Department of Revenue, of Columbia, for respondent.

Chief Justice TOAL:

Fraternal Order of Police et. al. ("Taxpayers") challenge the constitutionality of the Bingo Act of 1989 ("1989 Act"),[1] and two additional bingo statutes enacted after the 1989 Act, S.C.Code Ann. §§ 12–21–3441 and 12–21–3610 (Supp.1995).[2] Taxpayers brought their challenge in an effort to recover taxes paid to the South Carolina Department of Revenue ("the Department") pursuant to these statutes between July 1, 1992, and October 1, 1997.

## FACTUAL/PROCEDURAL BACKGROUND

The parties have stipulated to the relevant facts. The Taxpayers first filed an action in 1993 challenging the 1989 Act on both constitutional and non-constitutional grounds. The Taxpayers did not exhaust their administrative remedies by filing a claim for a refund for taxes paid, and the case was dismissed in 1994 with leave to restore. Taxpayers filed a refund claim in 1995, and raised all of the non-constitutional claims from the 1993 action. The Department denied the refund claim, and the Taxpayers appealed all the way to this Court. This Court affirmed on two of the three non-constitutional issues, and reversed on a third. *Fraternal Order of Police v. South Carolina Dept. of Rev.*, 332 S.C. 496, 506 S.E.2d 495 (1998) ("*FOP I* ").[3]

---

1. S.C.Code § 12–21–3310 et seq. (Supp.1994).

2. The contested provisions were repealed by the Bingo Tax Act of 1996, S.C.Code Ann. § 12–21–3910 (Supp.1997).

3. In *FOP I*, the Court addressed three issues: (1) whether bingo taxes collected pursuant to S.C.Code Ann. §§ 12–21–3440(B) and 12–21–3441 (Supp.1997) must be counted as gross proceeds, and consequently subject to the sales and use taxes imposed by S.C.Code Ann. § 12–21–3610 (Supp.1997); (2) whether gross proceeds includes monies bingo operators are statutorily required to pay out as prize money under § 12–21–3420(12) (Supp.1997); and (3) whether the operators are entitled to a refund on the sales taxes paid on their retail purchases of bingo cards, which they then resold to the players. The Court reversed the trial court on the first issue, holding that the bingo tax is not a component of gross proceeds, and accordingly is not subject to the sales and use taxes. The Court answered the remaining issues in the negative, and affirmed the lower court's denial of the Taxpayers' refund.

In 1997, the Taxpayers filed a motion to have their 1993 claim reinstated in order to move forward on the *constitutional* causes of action not addressed in *FOP I*. The motion was granted, and this Court denied the Department's appeal as interlocutory. The Taxpayers' original 1993 complaint was reinstated, but the parties stipulated that they were only raising the constitutional challenges to equal protection and due process within the original complaint.[4]

In addition to the 1989 Act, the Taxpayers are challenging the constitutionality of South Carolina Code sections 12–21–3441 and 12–21–3610, enacted after the 1989 Act, in 1991 and 1992 respectively. With the exception of section 12–21–3440, the 1989 Act is regulatory in nature. It establishes various rules relating to record keeping, regulation of promoters, location of games, and size of payouts. Section 12–21–3440 both regulates and taxes bingo. Section 12–21–3440(A) creates various classes of bingo license holders and specifies certain rules as to each class, including assessing differing license taxes for the individual classes. Section 12–21–3440(B), strictly a revenue statute, assesses a bingo tax on the various classes of bingo license holders.

The Taxpayers were all licensed bingo operators under the 1989 Act, holding either Class AA or Class B licenses. Under the 1989 Act, Class AA operators were allowed to conduct one bingo session per month with a minimum prize payment of $50,000 and a maximum of $250,000. S.C.Code Ann. § 12–21–3440(A)(1) (Supp.1994). The Taxpayers holding a Class B license were allowed to conduct three bingo games per week, but were limited to a maximum payout of $8,000 per session. S.C.Code Ann. § 12–21–3440(A)(2) (Supp.1994).

The additional statutes challenged, sections 12–21–3441 and 12–21–3610, are both revenue provisions. Section 12–21–3441 assesses an additional bingo tax on holders of Class AA and Class B licenses. Section 12–21–3610 assesses a sales tax on the gross proceeds derived from bingo.

---

4. Rather than amending their original complaint, which contained both causes of action that had already been addressed in *FOP I* and listed plaintiffs that were no longer parties, the Taxpayers and the Department stipulated that the first, second, and third causes of action had been resolved.

The Taxpayers and the Department presented arguments before the circuit court on the constitutional claims on February 7, 2000. The parties did not call any witnesses. On April 6, 2000, the circuit court ruled in favor of the Department on all issues and dismissed the Taxpayers' claims with prejudice. The following issues are raised on appeal:

I. Did the Circuit Court err in failing to find that Article XVII, § 7 of the South Carolina Constitution made bingo a non-lottery game, and, consequently, conferred a constitutional right upon Taxpayers to conduct bingo?

II. Did the Circuit Court err in failing to find the 1989 Act and S.C.Code Ann. §§ 12–21–3441 and 12–21–3610 (Supp.1994) violated Taxpayers' rights to Equal Protection, Due Process, and Free Speech?

III. Did the Circuit Court err in failing to find that Article XVII, § 7 of the South Carolina Constitution impliedly exempts Taxpayers from taxation under the 1989 Act and S.C.Code Ann. §§ 12–21–3441 and 12–21–3610?

IV. Are the Taxpayers claims barred by *res judicata?*

### Law Analysis

#### I. Right to Conduct Bingo

■ The Taxpayers argue that the 1974 amendment to Article XVII, § 7 of the South Carolina Constitution made bingo a non-lottery game, and consequently conferred upon them a right to conduct bingo. We disagree.

■ Article XVII, § 7 of the South Carolina Constitution provides,

No lottery shall ever be allowed or be advertised by newspapers, or otherwise, or its tickets be sold in this State. The *game of bingo,* when conducted by charitable, religious or fraternal organizations exempt from federal income taxation or when conducted at recognized annual State or county fairs, *shall not be deemed a lottery* **prohibited by this section.**

S.C. Const. art. XVII, § 7 (1976) (emphasis added).[5] When construing the constitution, the Court applies rules similar to

---

5. Prior to 1975, the South Carolina Constitution contained a general prohibition against lotteries, and did not exempt bingo from the prohi-

those relating to the construction of statutes. *Davis v. County of Greenville*, 313 S.C. 459, 443 S.E.2d 383 (1994). In interpreting statutes, the Court must give statutory language its plain and ordinary meaning. *FOP I*, 332 S.C. at 499, 506 S.E.2d at 496 (citations omitted).

This Court addressed bingo's status as a lottery in *Army Navy Bingo, Garrison No. 2196 v. Plowden*, 281 S.C. 226, 314 S.E.2d 339 (1984). In *Army Navy Bingo*, bingo operators challenged the constitutionality of the prize limitations and the residence requirement in S.C.Code Ann. § 12–21–2590, arguing that the provisions violated the Fourteenth Amendment due process clause. In denying any due process violation, the Court held, "[s]ection 7 is not a self-executing constitutional grant of power to conduct bingo. On the contrary, [it] indicates that bingo is no longer constitutionally prohibited." *Army Navy Bingo*, 281 S.C. at 228, 314 S.E.2d at 340. The Court then concluded,

> Bingo is a lottery, and it is gambling. There is no right to conduct bingo under the State Constitution.
>
> Nor is there a fundamental right to gamble protected by the Federal Constitution. In fact, the State's power to suppress gambling is practically unrestrained.

*Id.* (citations omitted).

The Taxpayers concede that finding that bingo is not a lottery, and, therefore, is not gambling, is central to their argument that the 1989 Act violates their constitutional rights to due process and equal protection. The Taxpayers attempt to circumvent the seemingly clear language to the contrary in *Army Navy Bingo* by arguing that this Court was not talking about traditional bingo when it said "[b]ingo is a lottery, and it is gambling." 281 S.C. at 228, 314 S.E.2d at 340. The Taxpayers base this contention solely on *Army Navy Bingo's* citation to *Bingo Bank, Inc. v. J.P. Strom*, 268 S.C. 498, 234 S.E.2d 881 (1977).

---

bition against lotteries. S.C. Const. art. XIV, § 2 (1868); S.C. Const. art. XVII, § 7 (1898). Until the amendment to the Constitution in 1974 that exempted bingo from the prohibition against lotteries, bingo was illegal in South Carolina. This section was amended again in 2001 to allow the State to conduct a lottery, but the exemption allowing charitable organizations to conduct bingo was not altered. S.C. Const. art. XVII, § 7 (Supp.2001).

In *Bingo Bank*, the Court addressed whether the game being played qualified as the bingo permitted under the Constitution. The Court found that the game being played in *Bingo Bank* was not, in fact, the traditional game of bingo contemplated by the Constitution. 268 S.C. at 503, 234 S.E.2d at 883. Taxpayers argue, then, that the Court's citation to *Bingo Bank* in *Army Navy Bingo* for the proposition that bingo is a lottery and is gambling is misplaced in the context of the traditional bingo contemplated in and permitted by the Constitution.

In our opinion, Taxpayers' argument is unconvincing. The Court's statement in *Army Navy Bingo* is not a quote from *Bingo Bank*. Although *Bingo Bank* involved a game that is not encompassed in the Constitution's definition of bingo, the game in *Army Navy Bingo* was traditional bingo. Further, the Court repeated this interpretation in *Johnson v. Collins Entertainment, Co.*, 333 S.C. 96, 508 S.E.2d 575 (1998). In *Johnson*, decided long after the 1974 amendment and *Army Navy Bingo*, the Court noted that bingo is commonly defined and understood to be a lottery. *Johnson*, 333 S.C. 96, 508 S.E.2d 575 (citing Encarta 97 Encyclopedia (Microsoft deluxe ed.1996); 2 The New Encyclopedia Brittanica 218 (15th ed.1997)). In his dissent, Justice Burnett expounded, "[i]n fact, with the passage of the constitutional amendment in 1974, the citizens of this State specifically recognized that the game of bingo is a lottery prohibited by Article XVII, § 7. By adopting the amendment, the citizens of South Carolina legalized the playing of bingo in certain limited circumstances." *Id.* at 107, 508 S.E.2d at 581 (Burnett, J., dissenting).

We believe this Court carefully considered its statement in *Army Navy Bingo*, a case involving traditional bingo, when it declared, in no uncertain terms, that "[b]ingo is a lottery, and it is gambling." The 1974 amendment to Article XVII simply makes a limited exception for bingo, *as a lottery*, from this State's constitutional prohibition against lotteries. The plain meaning of the portion of Article XVII, § 7 that reads, "bingo ... shall not be deemed a lottery prohibited by this section" is that bingo remains a lottery, but is a lottery that is not prohibited by the Constitution.

The Taxpayers' argument that they have a constitutional right to conduct bingo flows from the principle that conducting bingo is a privilege granted by the Constitution. This premise is flawed. As discussed, in *Army Navy Bingo*, this Court held that bingo is a lottery and is gambling; that there is no right to gamble under the State Constitution; that there is no "fundamental right to gamble" under the Federal Constitution; and that "the State's power to suppress gambling is practically unrestrained." *Army Navy Bingo*, 281 S.C. at 228, 314 S.E.2d at 340 (citing *Lewis v. United States*, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475 (1955); *Sin v. Wittman*, 198 U.S. 500, 25 S.Ct. 756, 49 L.Ed. 1142 (1905)). The Taxpayers do not address this direct precedent, and concede that finding bingo is *not* a lottery, and, therefore, is *not* gambling is central to their case.

In our opinion, there is no support for the Taxpayers argument against the precedent set in *Army Navy Bingo* and in *Johnson v. Collins*.

## II. Violation of Constitutional Rights

The Taxpayers argue the 1989 Act and S.C.Code Ann. §§ 12–21–3441 and 12–21–3610 violate their constitutional rights to equal protection, due process, and free speech.

### A. Equal Protection

The Taxpayers contend that the circuit court erred in failing to find the statutes at issue violated equal protection.[6] We disagree.

 This Court recognizes that "the determination of whether a classification is reasonable is initially one for the legislature and will not be set aside by the courts unless it is plainly arbitrary." *Gary Concrete Products, Inc. v. Riley*, 285 S.C. 498, 504, 331 S.E.2d 335, 338 (1985). The requirements of equal protection are satisfied as long as (1) the classification bears a reasonable relation to the legislative purpose sought to be effected; (2) the members of the class are treated alike under similar circumstances and conditions; and (3) the classification rests on some reasonable basis. *Id.* According to the United States Supreme Court,

6. S.C. Const. art. I, § 3; U.S. Const. amend. XIV.

[u]nless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest.

*City of New Orleans v. Dukes,* 427 U.S. 297, 303–04, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511, 517 (1976).

■ The Taxpayers allege classifying them as bingo charities, and placing additional regulations and taxes on them as bingo charities violates equal protection. Applying the rational basis standard, the circuit court found Taxpayers were not treated differently as they received the same property tax exemptions as other charities and received identical tax treatment when engaged in the same activities as other charities. The circuit court found the fundraising activity of playing bingo was what was treated differently, and that all charities that conducted bingo were treated alike. The circuit court held that the legislature's stated purpose in enacting the statutes at issue, regulation and taxation of bingo, was a legitimate legislative purpose, and that the statutes were rationally related to achieving the stated purpose.[7]

Taxpayers argue that regulation of bingo is not a legitimate purpose because the statutes designed to regulate bingo interfere with the Taxpayers right to play bingo. Assuming *arguendo* the 1989 Act did have a proper purpose, Taxpayers contend it is not rationally related to achieving that objective. We disagree. Applying the rational basis test to both the regulatory and revenue provisions of the 1989 Act and sections 12–21–3441 and 12–21–3610, the requirements of equal protection are satisfied. In our opinion, the regulation of bingo is a legitimate state purpose, the regulations within the 1989 Acts are rationally related to that purpose, and all charities that conduct bingo are treated alike under the statute.

---

**7.** *See* the 1989 Acts title, "Regulation of Bingo," and introductory statement: "An act to amend the Code of Laws of South Carolina, 1976 by adding Article 23, Chapter 21, Title 12, so as to provide for the regulation of the game of bingo by the Tax Commission." Act No. 188, 1989 S.C. Acts, Section 1.

First, the Tax Commission's 1992 Bingo Task Force Report, "Bingo in South Carolina: Who Really Benefits?" [8] (admitted without objection), makes clear that bingo can invite criminal activity and fraud, including organized crime, as it involves large sums of cash, and, therefore, that it justifies state regulation. The Task Force found that bingo required "aggressive enforcement" to avoid criminal activity and even recommended additional regulation of the industry for the same reason.[9] Second, the regulations are rationally related to regulating bingo to prevent the proliferation of crime. Requiring charities that wish to conduct bingo to file an application for a license, for example, helps the state monitor what groups are playing bingo and at what level. Third, all charities that conduct bingo are subjected to the same regulations, and so are treated similarly for purposes of equal protection. Although Class AA and Class B license holders pay higher taxes, and pay a sales tax on their gross proceeds that Class E holders are not required to pay, these distinctions are justified because Class AA and Class B holders receive advantages that the other classes do not. Class AA and Class B holders can give much larger prize payouts, attract more players, and, in turn, raise more revenue.[10]

The justification for the challenged revenue statutes is much the same, but the burden of proving tax classifications unconstitutional is even more difficult for the Taxpayer to meet. For tax statutes, "the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes." *Madden v. Kentucky*, 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590 (1940). The purpose of the tax statutes is to raise revenue. If the Court finds regulating bingo is legitimate, it follows that taxing bingo to raise revenue is legitimate as such revenue is needed to cover the costs of the state's regulation. As the Supreme Court noted in *Madden,* "[t]raditionally classification has been a device for fitting tax programs to local needs and usages in

8. R. 311–356.

9. Bingo Task Force Report, R. 311–356.

10. Bingo Task Force Report, R. 321–22.

order to achieve an equitable distribution of the tax burden." *Id.* Under this theory, the taxing statutes at issue are rationally related to raising revenue, as are the classifications within them that distinguish between the different classes of licensees, because they raise revenue according to how much money each class of license holders is likely to make.

Additionally, Taxpayers contend that the circuit court erred in applying the rational basis standard, and should have applied some form of heightened scrutiny. We disagree.

As discussed, strict scrutiny is indicated when "a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage." *City of New Orleans v. Dukes,* 427 U.S. at 303, 96 S.Ct. at 2516, 49 L.Ed.2d at 517. Taxpayers cite no authority for the proposition that conducting bingo is a fundamental right, and it is difficult to conceive how conducting bingo could be considered a *personal* right, on the same level as the right to freedom of religion, for example. Regardless, this is not a novel issue. As discussed, this Court has held that bingo is still gambling, that there is no fundamental right to gamble under the South Carolina Constitution or the Federal Constitution, and that "the State's power to suppress gambling is practically unrestrained." *Army Navy Bingo,* 281 S.C. at 228, 314 S.E.2d at 340. Under this precedent, heightened scrutiny is not justified.

### B. Due Process

Taxpayers argue that the 1989 Act and sections 12–21–3441 and 12–21–3610 violate their rights to due process of law by effectively depriving them of the right to conduct bingo.[11] We disagree.

In *R.L. Jordan, Inc. v. Boardman Petroleum, Inc.,* this Court adopted the modern test for substantive due process challenges to social and economic welfare legislation. 338 S.C. 475, 527 S.E.2d 763 (2000). Noting that modern rules give great deference to legislative judgment to promote public welfare, this Court adopted the modern standard for reviewing all substantive due process challenges to state statutes.

---

11. S.C. Const. art. 1, § 3; U.S. Const. amend. XIV.

*Id.* Under *R.L. Jordan,* "legislation is not overturned unless the law has no rational relationship to any legitimate interest of government." *Id.* at 477–78, 527 S.E.2d at 765.

For the same reasons that regulating and taxing bingo are legitimate objectives for purposes of equal protection, we find they are legitimate for purposes of due process. The Taxpayers' due process challenge is based on the faulty premise that bingo is not a lottery, and cannot be regulated as such, and that Article XVII, § 7 of our Constitution created a fundamental *right* to play bingo. As discussed at length, this Court has already decided that there is no right to play bingo. *Army Navy Bingo.* This Court tried to put this question to rest in *Army Navy Bingo,* by stating that bingo can only be conducted by license, and that the license confers no property right. 281 S.C. at 229, 314 S.E.2d at 340. The Court also held that "[b]ingo may only be conducted in accordance with the restrictions imposed by the legislature." *Id.*

In any case, the regulatory and revenue provisions were enacted to further a legitimate governmental interest: regulation of bingo to prevent the proliferation of crime.[12] The Taxpayers bear a particularly onerous burden in attempting to prove the tax statutes violate due process. In *Army Navy Bingo,* this Court recognized that the old bingo licensing scheme at issue was part of the State's tax law. Further, this Court found that "a tax does not violate the Fourteenth Amendment due process clause when its enforcement may result in destroying a particular business." *Army Navy Bingo,* 281 S.C. at 229, 314 S.E.2d at 340. In light of this Court's previous recognition of the legislature's power to regulate and tax bingo, and of the state's legitimate interest in doing so, it is clear that Taxpayers have not proven a violation of due process.

## C. Free Speech

The Taxpayers argue that the challenged statutes violate their right to freedom of speech. This argument is not preserved for review by this Court.

---

12. *See* Act No. 188, 1989 S.C. Acts, 1; Bingo Task Force Report, R. 311–357

Taxpayers did not allege a violation of free speech in their complaint. After the 1996 action, the only causes of action remaining were Taxpayers' equal protection and due process claims. At the hearing before the circuit court, Taxpayers' counsel stated, "so we are here today basically on the re-filed complaint, when the action was restored solely on the due process and equal protection claims." Although counsel later referred to some Supreme Court cases involving First Amendment challenges, it never presented a direct argument that the statutes in question violated the First Amendment. The circuit court did not address a First Amendment challenge in its order either.

■■■■ Generally, claims or defenses not presented in the pleadings will not be considered on appeal. Toal, Vafai, and Muckenfuss, *Appellate Practice in South Carolina* (2d Ed.2002) (citing *McNeely v. South Carolina Farm Bureau Mut. Ins. Co.*, 259 S.C. 39, 190 S.E.2d 499 (1972)). This rule is consistent with the concept that one cannot present one theory at trial, lose, and then attack the decision below on another theory not argued at trial. *Id.* Although some issues not raised in the pleadings may become part of the case by implied consent of the parties, this is not such a case. Rule 15(b), SCRCP. In order to be tried by implied consent, the issue must have been discussed extensively at trial. *See Andrews v. von Elten & Walker, Inc.*, 315 S.C. 199, 432 S.E.2d 500 (Ct.App.1993). As the First Amendment challenge was not pleaded, discussed extensively at trial, or ruled upon by the trial judge, it is not preserved for review.

### III. Implied Exemption from Taxation

Taxpayers argue Article XVII, § 7 creates an implied exemption from taxation for charities that conduct bingo. We disagree.

■■■■ Once again, Taxpayers' argument is based on the flawed reasoning that the constitutional amendment created a right to play bingo comparable to the right of free speech or the freedom of religion. Taxpayers as charities are not inherently exempt from taxation; charities are tax exempt only by operation of specific statutory or constitutional provisions. *See* 71 Am.Jur.2d 362 (1972). Although legislatures have

historically provided tax relief for charities, such tax relief has not become a constitutional right. *Id.*

Article XVII, § 7 does not create an express tax exemption for charities conducting bingo. In order to prove such charities are impliedly exempt, the implication must be "plain." *Ellerbe v. David,* 193 S.C. 332, 8 S.E.2d 518 (1940). Statutory language alleged to create "exemptions from taxation will *not* be strained or liberally construed in favor of the taxpayer claiming the exemption." *York County Fair Assoc. v. South Carolina Tax Comm.,* 249 S.C. 337, 341, 154 S.E.2d 361, 363 (1967) (emphasis added).

In our opinion, Taxpayers' argument that an implied exemption arises out of the state's historical tax treatment of charities is insufficient to show an implied exemption. Rather, their argument is a reflection of the inflated stature Taxpayers have given to the constitutional amendment's exemption of bingo from the prohibition against lotteries. As this Court commented,

[t]he exemption for charitable bingo operators in the general prohibition of gambling has been taken far beyond its intended purpose of giving South Carolina charities a means of additional revenue. Certainly, the operation of bingo should not be the primary purpose for the existence of the exempted groups in South Carolina.

*Army Navy Bingo,* 281 S.C. at 230, 314 S.E.2d at 341.

### IV. *Res Judicata*

The Department argues that Taxpayers' constitutional claims should have been brought simultaneously with their non-constitutional claims in *FOP I,* and, as a result, are now barred by the doctrine of *res judicata.* We disagree.

In *Ward v. State,* this Court held that administrative law judges cannot rule on the constitutionality of a statute. 343 S.C. 14, 538 S.E.2d 245 (2000). According to *Ward,* in cases raising solely constitutional issues, "a court may decide the case without waiting for an administrative ruling." *Id.* at 19, 538 S.E.2d at 247. In *Ward,* federal retirees brought a declaratory judgment to challenge the constitutionality of a statute, and the Court held bringing a declaratory action in

the circuit court was the only appropriate remedy because the ALJ could not rule on the constitutionality issue.

Taxpayers raised all of the non-constitutional issues from the 1993 original complaint in *FOP I* to the ALJD. On appeal, the circuit court judge claimed the constitutional issues could not be raised because they were not ruled upon by the ALJ below. Based on this Court's ruling in *Ward*, Taxpayers were not required to raise them to the ALJ in *FOP I*, and were justified in raising their remaining constitutional issues in a declaratory judgment action directly to the circuit court.

## CONCLUSION

The success of Taxpayers' constitutional challenges to the 1989 Act and to sections 12–21–3441 and 12–21–3610 depends entirely on finding that the 1974 constitutional amendment to Article XVII, § 7 created a right to play bingo. This Court's opinion in *Army Navy Bingo* answers this question in the negative. We have found no reason why *Army Navy Bingo* should be overruled. For the foregoing reasons, we **AFFIRM** the circuit court on all issues and deny the Department's claim that Taxpayers' case is barred by the doctrine of *res judicata*.

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.